Stephanie J. Peet, Esq. (PA Bar No. 91744)
Michael D. Ridenour, Esq. (PA Bar No. 323576)
JACKSON LEWIS P.C.
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, Pennsylvania 19102
Telephone:  (267) 319-7802
Fax:  (215) 399-2249
Attorneys for Defendants Bucknell University, Drexel University, Lafayette College, and Lehigh University

## IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWRENCE "POPPY" LIVERS,<br>On his own behalf and on behalf of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, et al.,<br><br>Defendants. | Civil Action No. 2:17-cv-04271-MMB |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

Of Counsel and on the Brief:
    Stephanie J. Peet, Esq.

On the Brief:
    Michael D. Ridenour, Esq.

1

## PRELIMINARY STATEMENT

Defendants, Bucknell University, Drexel University, Lafayette College, and Lehigh University (collectively referenced herein as the "Defendants"), by and through their undersigned counsel, respectfully submit this memorandum of law in support of their motion to dismiss Plaintiff's "Complaint – Class Action and Jury Demand" pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).[1,2]

Plaintiff is a former scholarship football player at Villanova University.   This action is the latest of a series of lawsuits claiming that college athletes are entitled to minimum wage under the Fair Labor Standards Act ("FLSA").   Like those who came before him, Plaintiff predicates his claims on the theory that student athletes are employees of the institutions at which they participate in intercollegiate athletics.   Simply stated, that theory has no legal basis.

As more fully set forth herein, Plaintiff's theory of liability has been **rejected** by other federal courts twice within the last two years.[3]   The courts' decisions in Berger and Dawson persuasively show that, as a matter of law, college athletes are not, and were never intended to be, covered by the minimum wage provisions of the FLSA.   In reaching those decisions, the courts correctly recognized the economic reality that the relationships between college athletes and their schools are vastly different than those between employees and employers.   Part of that economic reality derives from the country's long and well-recognized tradition of amateur college athletics, for which student athletes have never been paid.   That economic reality also derives from the fact that the United States Department of Labor ("DOL"),

---

[1] That complaint, PACER Docket Entry No. 1, shall be referenced herein as the "Complaint."

[2] The National College Athletic Association ("NCAA") and other defendants (collectively referenced as the "NCAA Defendants") are represented by separate counsel and have also moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).   To the fullest extent permitted by law, Defendants incorporate the NCAA Defendants' arguments into this motion as if they were set forth herein at length.

[3] See Berger v. Nat'l Collegiate Athletic Ass'n, 162 F. Supp. 3d 845 (S.D. Ind. 2016), aff'd, 843 F.3d 285 (7th Cir. 2016), and Dawson v. Nat'l Collegiate Athletic Ass'n, 250 F. Supp. 3d 401 (N.D. Cal. 2017), discussed infra.

which is responsible for interpreting and enforcing the FLSA, has long taken the position that the FLSA does **not** cover student athletes. Indeed, the DOL has **never** brought an enforcement action against a college or university for failing to pay minimum wage to a student athlete on account of his or her participation in intercollegiate athletics. Thus, this lawsuit seeks a radical departure from settled and long-standing interpretations of the nation's wage law through the courts, when any such change is properly the function of legislative and executive bodies.

Plaintiff's claims should be dismissed for the compelling reasons articulated in Berger and Dawson, and in persuasive DOL guidance. That authority provides ample basis for dismissing Plaintiff's claims without further inquiry. Even if that were not the case, Plaintiff has nevertheless failed to plead sufficient facts to support an FLSA claim under traditional economic reality principles. Among other things, Plaintiff has failed to plead any facts to support a plausible conclusion that any Defendant was Plaintiff's employer, as that term is defined by the FLSA. Plaintiff instead contends that he was simultaneously employed by each and every defendant to this action. In other words, Plaintiff contends that he was jointly employed by the NCAA, Villanova, all four Defendants, and every other college and university that he has named as a defendant in this action. Needless to say, there is no legal basis for that absurd proposition and Plaintiff lacks standing to pursue any claims against Defendants.

Plaintiff's claims against Defendants must be dismissed, as a matter of law, for those reasons. Moreover, those claims should be dismissed with prejudice, without leave to replead. Plaintiff simply cannot remedy any of the fatal flaws in the Complaint by way of amendment. That is particularly true with regard to the **purely legal issue** of whether there is a valid FLSA claim (which there is not), which is ripe for disposition on this motion to dismiss.

Therefore, for the reasons set forth herein, Defendants respectfully request that the Court enter the enclosed Order dismissing Plaintiff's Complaint with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## PLAINTIFF'S ALLEGATIONS[4]

Plaintiff filed his Complaint in this matter on September 26, 2017.  He asserts a single claim, for allegedly unpaid minimum wages in violation of § 216 of the FLSA, 29 U.S.C. 216(b).  See Complaint, ¶ 8.  Unsurprisingly, Plaintiff claims the alleged violations were willful even though, as set forth herein, there is neither precedent requiring college athletes to be paid any wages, nor any basis to even find an FLSA violation by Defendants. Id., ¶ 9.

Plaintiff asserts the FLSA claims against both the NCAA and "private and semi-public NCAA Division I member schools" that, according to Plaintiff, "have jointly agreed to violate wage and hour provisions of the [FLSA]."  Id., ¶ 1.  As Plaintiff succinctly states (and incorrectly concludes), "[t]he crux of [the] Complaint is that recipients of athletic scholarships, which require them to participate in NCAA athletics under daily supervision of full-time coaching and training staff, i.e., 'Scholarship Athletes,' are employees of NCAA member schools as much as, and arguably more than, fellow students employed in work study programs[.]"  Id. at ¶ 2.

Plaintiff alleges that he was a scholarship football player at Villanova University during the 2014-2015 academic year.  Id., ¶¶ 20, 176.  Despite the absence of any allegations that Plaintiff was a scholarship athlete at any other institution, including any Defendant, at any time, Defendant nevertheless claims that he was jointly employed by the four Defendants and the

---

[4] Defendants generally deny Plaintiff's substantive allegations and deny any liability to Plaintiff.  However, the factual allegations in the Complaint will be accepted as true solely for purposes of this motion, pursuant to the applicable law.  See Warth v. Seldin, 422 U.S. 490, 501 (1975); Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011), quoting Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992).  Plaintiff's legal conclusions and bare assertions are not entitled to any presumption of truth, however, and are specifically denied.  See Point I(A) hereof.

sixteen other academic institutions named in this action, as well as the NCAA, because NCAA member institutions adhere to the NCAA's bylaws.  See id. at ¶¶ 20, 24, 26, 30, and 146-174. Based on that absurd conclusion, Plaintiff argues that every defendant to this action is jointly liable to Plaintiff under the FLSA. Id., ¶ 20.  Plaintiff also purports to bring this matter on behalf of a putative class of scholarship athletes at the institutional defendants named in this action. Id., ¶ 8.

## LEGAL ARGUMENT

## POINT I

### PLAINTIFF'S COMPLAINT FAILS TO STATE AN ACTIONABLE CLAIM UNDER THE FLSA AGAINST DEFENDANTS.

Plaintiff's Complaint fails to state an actionable FLSA claim against Defendants. As set forth herein, Plaintiff's theory of recovery has been rejected twice in the last two years by other federal courts, in Berger and Dawson.   Plaintiff's theory of recovery also is directly contrary to guidance from the United States Department of Labor ("DOL"), which has never recognized student-athletes as "employees" for purposes of the FLSA.  Further, Plaintiff has not pled a cognizable FLSA claim against Defendants even if that claim were to be analyzed under the traditional "economic reality" test.  None of those fatal deficiencies can be remedied by way of amendment, as the issue before the Court is **purely** a legal one.   Therefore, Plaintiff's Complaint can and should be dismissed with prejudice, without leave to replead.

### A.     The Standards Governing Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6).

The Third Circuit has adopted a three-step process for analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), as follows:

> First, we outline the elements a plaintiff must plead to a state a claim for relief. Next, we peel away those allegations that are no more than conclusions and thus not entitled to the assumption of

5

truth.  Finally, we look for well-pled factual allegations, assume their veracity, and then "determine whether they plausibly give rise to an entitlement to relief."  This last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

Bistrian v. Levi, 696 F.3d 352, 365 (3d Cir. 2012) (internal citations omitted); Richardson v. Pierce, 2017 U.S. Dist. LEXIS 174606, at *6 (E.D. Pa. Oct. 23, 2017), citing Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011), and Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

With regard to the first step of the analysis, Fed. R. Civ. P. 8(a)(2) requires a complaint to minimally contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Ashcroft v. Iqbal, 556 U.S. 662, 667-68 (2009).  While that Rule does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Id. at 678, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, a complaint cannot merely offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Id.; see also Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997) ("a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").  Rule 8(a)(2) instead "requires a 'showing', rather than a blanket assertion, of entitlement to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 1998).  It is incumbent on the Plaintiff to raise a "reasonable expectation" that discovery will reveal evidence of the necessary elements of the Plaintiff's claims, thereby justifying the advancement of "the case beyond the pleadings to the next stage of the litigation."  Id. at 234-35, citing Twombly, 550 U.S. at 556.

Under those guiding principles, to survive a motion under Rule 12(b)(6), a complaint must set forth enough factual allegations to show that the asserted claims are **plausible**, not merely possible.  The plausibility standard requires the plaintiff to amplify his

claims with factual allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  The factual allegations must be "enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  The plaintiff's complaint must be dismissed if he has not "nudged [his] claims across the line from conceivable to plausible." Id. at 570; Iqbal, 556 U.S. at 678.

Plaintiff's Complaint does not state any actionable FLSA claim against Defendants under those controlling principles, for the reasons set forth herein.  It must therefore be dismissed with prejudice, as a matter of law.

**B.** **Plaintiff's Complaint Should Be Dismissed Pursuant To The Compelling Reasoning In Berger And Dawson That Participation In Intercollegiate Athletics Does Not Create An Employment Relationship Between Student-Athletes And Schools For Purposes Of The FLSA.**

Plaintiff's claims in this matter are not novel.  Rather, two other federal courts have **specifically rejected** Plaintiff's theory of liability against Defendants within the past two years:  (a) Berger v. Nat'l Collegiate Athletic Ass'n, 162 F. Supp. 3d 845 (S.D. Ind. 2016), aff'd, 843 F.3d 285 (7th Cir. 2016); and (b) Dawson v. Nat'l Collegiate Athletic Ass'n, 250 F. Supp. 3d 401 (N.D. Cal. 2017).  In apparent recognition of that fact, Plaintiff expressly references and attempts to preemptively distinguish Berger and Dawson in his Complaint.  See Complaint at, e.g., ¶¶ 6-7.[5]  Plaintiff's Complaint fails to identify any material differences between the claims in this matter, however, and those that were properly dismissed under the well-reasoned decisions in Berger and Dawson.

The claims in Berger are logically and legally indistinguishable from those in this action.  The plaintiffs there, former students at the University of Pennsylvania ("Penn") who were part of Penn's track and field team, brought an action against the NCAA, Penn, and more

---

[5] All references herein to Berger are to the decision issued by the Seventh Circuit Court of Appeals, unless otherwise stated.

than 120 NCAA-member schools under the FLSA.  843 F.3d at 288-89.  Many of those schools were private universities and included all of the Defendants.  Like the Plaintiff here, the plaintiffs in Berger alleged that student athletes are "employees" within the meaning of the FLSA, and that the NCAA and its member schools violated the FLSA by not paying them a minimum wage.  Id. The U.S. District Court for the Southern District of Indiana dismissed the plaintiffs' claims, holding that:  (a) the plaintiffs lacked standing to sue any school other than Penn; and (b) student athletes are not "employees" even of Penn for purposes of the FLSA.  Id. at 289.  The Seventh Circuit Court of Appeals affirmed the dismissal.  Id. at 288.

The Circuit Court first addressed the standing issue, noting that "[u]nder the FLSA, alleged employees' 'injuries are only traceable to, and redressable by, those who employed them.'"  Id. at 289, quoting Roman v. Guapos III, Inc., 970 F. Supp. 2d 407, 412 (D. Md. 2013).  The Court held that the plaintiffs had no standing to sue anyone but Penn because their "connection to the other schools and the NCAA is far too tenuous to be considered an employment relationship," such that they did not "plausibly allege[] any injury traceable to, or redressable by, any defendant other than Penn."   Id. at 289.  As such, the only question remaining for the Court was whether Penn – and only Penn – could be considered the plaintiffs' employer under the FLSA.

The Court answered that question in the negative as well.  While noting that the courts generally apply an "economic reality" test to determine whether the FLSA applies to the alleged employer-employee relationship, the Court also recognized that such a test is inappropriate when it "fail[s] to capture the true nature of the relationship."  Id. at 290-91, quoting Vanskike v. Peters, 974 F.2d 806, 808-09 (7th Cir. 1992).

The Court specifically found the economic reality test was not a "'helpful guide'" in the context of student-athletes, for several reasons. Id. at 291, quoting Vanskike, 974 F.2d at 809. First, there is a well-recognized and "revered tradition of amateurism in college sports[]" that the economic reality test does not take into account. Id., quoting Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla., 468 U.S. 85, 120 (1984). The overwhelming majority of courts throughout the country have also concluded that student athletes are not "employees." Id. (citations omitted). Furthermore, the DOL's own Field Operations Handbook ("FOH") – "an operations manual that provides Wage and Hour Division … investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance" – specifically states that extracurricular activities like "interscholastic athletics … are not work of the kind contemplated by [the FLSA] and do not result in any employer-employee relationship between the student and the school…." Id. at 292-93, quoting Field Operations Handbook (FOH), United States Dep't of Labor, https://www.dol.gov/whd/FOH/index.htm, at §§ 10b03(e), 10b24(a).[6]

Finally, the Berger Court found that, as a matter of law, student athletes did not perform "work" for Penn, such that the plaintiffs could not bring a plausible FLSA claim:

> Appellants in this case have not, and quite frankly cannot, allege that the activities they pursued as student athletes qualify as "work" sufficient to trigger the minimum wage requirements of the FLSA. Student participation in collegiate athletics is entirely voluntary. Moreover, the long tradition of amateurism in college sports, by definition, shows that student athletes – like all amateur athletes – participate in their sports for reasons wholly unrelated to immediate compensation. Although we do not doubt that student athletes spend a tremendous amount of time playing for their

---

[6] The Court found the FOH to be "persuasive" while acknowledging that it was not binding. Id. at 292-293. The Court also noted that it had previously cited the FOH as "persuasive authority" on several occasions. Id., citing Driver v. AppleIllinois, LLC, 739 F.3d 1073, 1075 (7th Cir. 2014), and Yi v. Sterling Collision Ctrs., Inc., 480 F.3d 505, 508 (7th Cir. 2007). As set forth in Point I(C) hereof, courts in the Third Circuit and throughout the nation have recognized the FOH as persuasive authority.

> respective schools, they do so—and have done so for over a
> hundred years under the NCAA—without any real expectation of
> earning an income.  Simply put, student-athletic "play" is not
> "work," at least as the term is used in the FLSA.  We therefore
> hold, as a matter of law, that student athletes are not employees
> and are not entitled to a minimum wage under the FLSA.

Id. at 293.  For that and the other reasons set forth in the decision, the Court rejected the

plaintiffs' contention that they should have been permitted an opportunity to amend the

complaint.  Id. at 294.  In that regard, the Court noted that the question of whether the plaintiffs

were "employees" under the FLSA was purely an issue of law and that discovery on the issue

would not alter the outcome.  Id.

The plaintiff in Dawson, a former football player for the University of Southern

California, brought a putative class action against the NCAA and the PAC-12 Conference under

the FLSA and the California Labor Code, on behalf of student athletes.  250 F. Supp. 3d at 403.

Relying heavily on Berger, the Court in Dawson agreed that student athletes are not covered by

the FLSA, as a matter of law, and granted a motion dismissing the plaintiff's claim with

prejudice, without leave to replead.  Id. at 409 ("Because Dawson's complaint is based on an

untenable legal theory, amendment would be futile.  The complaint is thus dismissed without

leave to amend."), citing Serra v. Lappin, 600 F.3d 1191, 1995 (9th Cir. 2010).

Citing Berger, the Dawson Court recognized that the economic reality test for

determining the existence of an employer-employee relationship was unhelpful and that "the

focus is on the 'true nature of the relationship.'"  Id. at 405, quoting Hale v. State of Ariz., 993

F.2d 1387 (9th Cir. 1993).  The Court ultimately held that the plaintiff failed to establish an

actionable FLSA claim for the reasons set forth in Berger, including that, inter alia:  (a) "'the

long tradition of amateurism in college sports, by definition, shows that student athletes—like all

amateur athletes—participate in their sports for reasons wholly unrelated to immediate

compensation'"; (b) student participation in college athletics is "'entirely voluntary'"; (c) students have played intercollegiate athletics for "'over a hundred years under the NCAA [] without any real expectation of earning an income'"; (d) "'the weight of the case law'" supports a finding that college athletes are not covered by the FLSA; and (e) the DOL's FOH expressly states that college students that participate in interscholastic athletics are not covered by the FLSA. Id. at 406-407 (citations omitted).   With particular regard to the "long tradition of amateurism in college sports," the Court specifically noted that "'not paying student-athletes is *precisely what makes them amateurs*." Id. at 408, quoting O'Bannon v. Nat'l Collegiate Athletic Ass'n, 802 F.3d 1049, 1076 (9th Cir. 2015) (emphasis in original), cert. denied, --- U.S. ---, 137 S. Ct. 277 (2016).

> Berger and Dawson are directly on point and clearly persuasive, and should be considered controlling for purposes of this action.   There is no meaningful distinction between the claims asserted in those cases and those asserted in this matter, and thus no basis for a different outcome.   As the Courts in those matters recognized:

- The traditional "economic reality" test simply does not capture the true nature of the relationship between student athletes and their schools.   Berger, 843 F.3d at 291; Dawson, 250 F. Supp. 3d at 405.

- The economic reality test is particularly inapt because it fails to take into account the well-recognized and "revered tradition of amateurism in college sports[]" that has existed for more than one hundred years, and that "'not paying student-athletes is *precisely what makes them amateurs*." Berger, 843 F.3d at 291, quoting Bd. of Regents, 468 U.S. at 120; Dawson, 250 F. Supp. 3d at 406-07; O'Bannon, 802 F.3d at 1076.

- The overwhelming majority of courts have held that student athletes are not employees for purposes of the FLSA or other purposes.   Berger, 843 F.3d at 291 (citations omitted); Dawson, 250 F. Supp. 3d at 406-07.[7]

---

[7] See, e.g., Kavanagh v. Trustees of Boston Univ., 795 N.E.2d 1170, 1172-75 (Mass. 2003) (affirming dismissal of *respondeat superior* claim against school for injury caused by student athlete and expressly declining to find an employment relationship, holding that "[s]tudents attend school to serve their own interests, not the interests of the school[,]" and that "[w]hile schools may benefit in various ways from the presence of a particular student, or may

- The DOL's FOH expressly sets forth the DOL's position that "interscholastic athletics … are not work of the kind contemplated by [the FLSA] and do not result in any employer-employee relationship between the student and the school[.] <u>Berger</u>, 843 F.3d at 293 (citation omitted); <u>Dawson</u>, 250 F. Supp. 3d at 406-07 (citation omitted).

- Participation in student athletics is not "work" for purposes of the FLSA.  <u>Berger</u>, 843 F.3d at 293.

Those compelling *legal* principles apply with equal force to the claims in this action and, along with the weight of the law, provide ample basis for dismissal of Plaintiff's Complaint.  Plaintiff cannot identify any persuasive authority to the contrary, much less authority that is binding on this Court.  Plaintiff also had not pled – and cannot plead – any facts that would alter the compelling **legal** conclusions reached by the Courts in <u>Berger</u> and <u>Dawson</u>.  In other words, any amendment would be futile.  <u>See</u> <u>Massarsky v. Gen. Motors Corp.</u>, 706 F.2d 111, 125 (3d Cir. 1983) (an amendment is futile if the amended claim would not survive a motion to dismiss).  Therefore, Plaintiff's Complaint should be dismissed with prejudice.

> **C.      Plaintiff's Complaint Should Be Dismissed Pursuant To The DOL's Clear And Compelling Statement That Participation In Intercollegiate Athletics Does Not Create An Employment Relationship Between Student-Athletes And Schools For Purposes Of The FLSA.**

As noted above, the FOH is "an operations manual that provides Wage and Hour Division … investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance." https://www.dol.gov/whd/FOH/index.htm (last visited December 13, 2017).  The Supreme Court

---

benefit in the future from a former student's later success, the student does not attend school to do the school's bidding."); <u>Waldrep v. Tex. Employer's Ins. Ass'n</u>, 21 S.W.3d 692, 701 (Tex. Ct. App. 2000) (injured football player was not an employee of the school for purpose of workers' compensation claim); <u>Hanson v. Kynast</u>, 494 N.E.2d 1091, 1094-95 (Ohio 1986) (affirming dismissal of *respondeat superior* claim against school for injury caused by student athlete, holding that the student athlete "is a buyer of education rather than an agent" of the school); <u>Coleman v. W. Mich. Univ.</u>, 336 N.W.2d 224, 227 (Mich. Ct. App. 1983) (injured football player was not an employee of the school for purpose of workers' compensation claim); <u>Rensing v. Ind. State Univ. Bd. of Trustees</u>, 444 N.E.2d 1170, 1174 (Ind. 1983) ("Scholarship recipients are considered to be students seeking advanced educational opportunities and are not considered to be professional athletes, musicians or artists employed by the University for their skills in their respective areas.").

has recognized that agency interpretations like those contained in the FOH are entitled to respect

to the extent they have the "power to persuade." Christensen v. Harris County, 529 U.S. 576,

587 (2000). That is undoubtedly the case with the FOH, as courts in this judicial circuit and

throughout the country regard the FOH as persuasive authority. See, e.g., Zellagui v. MCD

Pizza, Inc., 59 F. Supp. 3d 712, 716 (E.D. Pa. 2014) (citing the FOH as authority), citing Morgan

v. Family Dollar Stores, Inc., 551 F.3d 1244, 1274 n. 65 (11th Cir. 2008) ("noting that '[the

FOH] is persuasive' in the minimum wage context"), and Fast v. Applebee's Int'l, Inc., 638 F.3d

872, 874 (8th Cir. 2011) ("affirming that the DOL's Field Operations Handbook is 'reasonable,

persuasive, and entitled to deference'"); Hall v. Guardsmark, LLC, 2013 U.S. Dist. LEXIS

129490, at *52 (W.D. Pa. Sept. 11, 2013) (though not entitled to Chevron deference, the FOH is

"persuasive" authority), quoting Abel v. S. Shuttle Servs., Inc., 301 F. Appx. 856, 859 (11th Cir.

2008); Berger, 843 F.3d at 293 (citations omitted); Urnikis-Negro v. Am. Family Prop. Servs.,

616 F.3d 665, 675-76 (7th Cir. 201) (observing that pronouncements like the FOH "reflect[] the

DOL's official understanding of the FLSA's requirements" and are "entitled to a "measure of

respect' from the judiciary."), quoting Fed. Express Corp. v. Holowecki, 552 U.S. 389, 390

(2008).

      The FOH expressly articulates the DOL's long-standing interpretation that student

athletes are **not** employees of their schools for purposes of the FLSA. In particular, the DOH

states as follows in its relevant part:

> As part of their overall educational program, public or private
> schools and institutions of higher learning may permit or require
> students to engage in activities in connection with dramatics,
> student publications, glee clubs, bands, choirs, debating teams,
> radio stations, intramural and **interscholastic athletics** and other
> endeavors. Activities of students in such programs, conducted
> primarily for the benefit of the participants as part of the
> educational opportunities provided to the students by the school or

institution, **are not work of the kind contemplated by section 3(g) of the Act and do not result in an employer-employee relationship between the student and the school or institution**.

Id., § 10b03(e) (emphasis added).  Expanding on this discussion, the FOH confirms that students engaged in intercollegiate athletics and other extracurricular activities are not employees under the FLSA:

> University or college students who participate in activities generally recognized as extracurricular are generally not considered to be employees within the meaning of the Act.  In addition to **the examples listed in FOH 10b03(e)**, students serving as residence hall assistants or dormitory counselors … **are not employees under the Act**.

Id., § 10b24(a) (emphasis added).

Those statements clearly demonstrate that the DOL, as the agency charged with interpreting and enforcing the FLSA, considers student athletes to be outside of the FLSA's coverage.  That assessment reflects the DOL's decades of experience in interpreting and enforcing the FLSA since the statute's enactment in 1938, including defining the employer-employee relationship in a broad range of industries and settings.  Given the clarity and consistency of the DOL's guidance – the cited provisions of the FOH originating at least as far back as 1993 and 1998, with no wavering by the agency in the interim – this Court should accept the DOL's interpretation as controlling here.  See Urnikis-Negro, 616 F.3d at 675-76.  That is particularly so because the DOL has never initiated FLSA enforcement proceedings against the NCAA or any colleges or universities in connection with student athletes.  This is significant because, as the Supreme Court has explained in an analogous context, "while it may be 'possible for an entire industry to be in violation of the [FLSA] for a long time without the Labor Department noticing,' the 'more plausible hypothesis' is that the Department did not think the industry's practice was unlawful."  Christopher v. SmithKline Beecham Corp., 567 U.S. 142,

14

158 (2012) (bracketed text in original), quoting Dong Yi v. Sterling Collision Ctrs., Inc., 480 F.3d 505, 510-511 (2007).

Defendants anticipate that Plaintiff may seek to rely upon Memorandum GC 17-01, issued on January 31, 2017 by the outgoing General Counsel of the National Labor Relations Board, Richard F. Griffin, Jr., in opposition to this motion.  That Memorandum set forth the Office of the General Counsel's position that "scholarship football players in Division I FBS private sector colleges and universities are employees under the NLRA, with the rights and protections of that Act."  See Exhibit A, relevant portions of Memorandum GC-17-01, at 16.

Any reliance by Plaintiff upon Memorandum GC 17-01 is misplaced because the Memorandum is a legal nullity, having been rescinded by Griffin's successor on December 1, 2017.  See Exhibit B, Memorandum GC 18-02, at 4.  Moreover, Memorandum GC 17-01 is distinguishable because it relates only to the NLRA and not to the FLSA, and does not purport to articulate the DOL's position.  Thus, it would not be relevant to Plaintiff's claims even if it had not been rescinded.    Thus, Memorandum GC 17-01 is immaterial to the resolution of Defendants' motion to dismiss and should not be considered.

**D.    Plaintiff's Complaint Should Be Dismissed Even Under A Traditional "Economic Reality" Analysis.**

In the FLSA context, the alleged injuries of plaintiffs "are only traceable to, and redressable by, those who employed them."  Roman v. Guapos III, Inc., 970 F. Supp. 2d 407, 412 (D. Md. 2013).  In other words, a plaintiff cannot claim to have been injured by an entity other than his employer.

Third Circuit courts generally utilize an "economic reality" test to determine whether an employer-employee relationship exists for purposes of the FLSA.  See In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig., 683 F.3d 462, 467 (3d Cir. 2012), quoting

Goldberg v. Whitaker House Co-op, Inc., 366 U.S. 28, 33 (1961); Safarian v. Am. DG Energy Inc., 622 Fed. Appx. 149, 151 (3d Cir. 2015), quoting Martin v. Selker Bros., 949 F.2d 1286, 1293 (3d Cir. 1991). As the Courts in Berger and Dawson found, the traditional economic reality test is not useful in the case of student athletes because, *inter alia*, it "fail[s] to capture the true nature of the[ir] relationship[]" with their schools. Berger, 843 F.3d at 290-91, quoting Vanskike, 974 F.2d at 808-09; Dawson, 250 F. Supp. 3d at 406-07. Nevertheless, the economic reality test would not support a finding that Plaintiff was an employee of any of the Defendants if it were applied here.

The Third Circuit has held that the following factors are to be considered in determining whether a plaintiff is an employee of an alleged employer, for purposes of the FLSA:

(a)   The degree of the alleged employer's right to control the manner in which the work is to be performed;

(b)   The alleged employee's opportunity for profit or loss depending upon his managerial skill;

(c)   The alleged employee's investment in equipment or materials required for his task, or his employment of helpers;

(d)   Whether the service rendered requires a special skill;

(e)   The degree of permanence of the working relationship; and

(f)   Whether the service rendered is an integral part of the alleged employer's business.

Safarian, 622 Fed. Appx. at 151, citing Martin, 949 F.2d at 1293; see also Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382 (3d Cir. 1985); Jochim v. Jean Madeline Educ. Ctr. of Cosmetology, Inc., 98 F. Supp. 3d 750, 757 (E.D. Pa. 2015), citing Martin, 949 F.2d at 1293. While no one factor is dispositive, courts must consider the totality of the circumstances.

Donovan, 757 F.2d at 1382, citing Donovan v. Sureway Cleaners, 656 F.2d 1368, 1370 (9th Cir. 1981).

It is readily apparent that the economic reality test is incompatible with Plaintiff's claims. The majority of the factors – namely (b) through (e) – simply do not apply, at least in any meaningful way. The remaining factors, however, conclusively favor a finding that Plaintiff was not an employee of any Defendant.

First, Plaintiff has not alleged any facts which plausibly suggest that Defendants had any control over the manner in which any alleged "work" was to be performed.[8] It indeed defies logic and common experience that a football player at Villanova, under the supervision of coaches, trainers, and other personnel employed by Villanova, is subject to any control by an institution other than Villanova. Plaintiff has not alleged – and cannot plausibly or non-frivolously allege – that any of the Defendants exercised control over him. All Plaintiff has alleged is that the NCAA, Villanova, and the other institutional defendants are parties to an alleged agreement regarding how certain aspects of interscholastic athletic activities will be conducted. Plaintiff does not allege that Defendants control how those are implemented at Villanova or other institutions, however, and does not otherwise contend that Defendants had day-to-day control over his activities while he was at Villanova. The reality is that they did not have any such control and Plaintiff cannot plead any facts that would lead to a plausible alternate conclusion.

The final factor – whether the service rendered is an integral part of the alleged employer's business – also favors dismissal. As numerous courts have recognized, students attend institutions of higher learning to pursue a degree. Kavanagh, 795 N.E.2d at 1174-75.

---

[8] For the reasons set forth in Berger, Plaintiff's participation in interscholastic athletics at Villanova was not "work," as that term is used by the FLSA. See 843 F.3d at 293.

Educational institutions like Defendants exist to educate students, not to put on sporting events or other performances.  See Hanson, 494 N.E.2d at 1094; Coleman, 336 N.W.2d at 227.  The economic reality is that if not enough students choose to participate in a sport or other extracurricular activity, the school does not hire replacements.  The school does not, for example, hire athletes to play the sport, musicians to play in the orchestra, chess players to compete on the chess team, or actors to perform in plays, in lieu of students.  The school therefore provides the extracurricular activities for the benefit and participation of the students; the students do not staff the extracurricular activities for the benefit of the academic institutions.  See Hanson, 494 N.E.2d at 1095.

It is for those reasons that student athletes cannot successfully claim that they performed "work" for their educational institutions, as that term is defined by the FLSA's decisional authority.  See Berger, 843 F.3d at 292-93 (holding that, as a matter of law, the plaintiffs did not and could not assert any facts to support the legal conclusion that their participation in student athletics constituted "work" for purposes of the FLSA).  For purposes of the FLSA, "work" means "'physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business.'" Lugo v. Farmer's Pride Inc., 802 F. Supp. 2d 598, 602 (E.D. Pa. 2011), quoting Tenn. Coal, Iron & R. Co. v. Muscoda Local, 321 U.S. 590, 598 (1944).  As noted, however, colleges and universities are in the business of education, not athletics. Moreover, while student athletes undoubtedly exert themselves, they do so voluntarily, for their own reasons.  See Berger, 843 F.3d at 293 ("Student participation in collegiate athletics is entirely voluntary.  Additionally, the long tradition of amateurism in college sports, by definition, shows that student athletes—like all amateur athletes—participate in their sports for

reasons wholly unrelated to immediate compensation."); see also Walling v. Portland Terminal Co., 330 U.S. 148, 152-53 (the FLSA "cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction."). Thus, their efforts cannot be considered to be "work" for purposes of the FLSA, as a matter of law. An opportunity to amend would not alter that inescapable and purely legal conclusion.

Therefore, Plaintiff's Complaint should be dismissed with prejudice, as a matter of law.

## POINT II

### PLAINTIFF LACKS STANDING TO PURSUE ANY FLSA CLAIM AGAINST DEFENDANTS

#### A.     The Standards Governing Motions To Dismiss Under Fed. R. Civ. P. 12(b)(1).

In order to satisfy the standing requirements of Article III of the U.S. Constitution, the plaintiff bears the burden of showing that: (a) he has suffered an "injury in fact" that is "concrete and particularized" and "actual or imminent, [and] not conjectural or hypothetical"; (2) the claimed injury is "fairly traceable to the challenged action of the defendant"; and   (3) "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); see also Common Cause v. Pa., 558 F.3d 249, 257 (3d Cir. 2009) (as the party invoking the court's jurisdiction, the plaintiff bears the burden of showing standing), citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 (2006); Lujan, 504 U.S. at 561 (same, citations omitted).  "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." Common Cause, 558 F.3d at 257, quoting Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006).  As

such, motions to dismiss for lack of standing are properly brought pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction.

Significantly, the "[i]nclusion of class allegations does not relieve a plaintiff of alleging that she has suffered an injury in fact, fairly traceable to the challenged action of the defendants, that may be redressed by a decision in her favor." Attanasio v. Cmty. Health Sys., 2011 U.S. Dist. LEXIS 121764, at *11 (M.D. Pa. Oct. 20, 2011), citing Cavallaro v. UMass Mem. Health Care Inc., 2011 U.S. Dist. LEXIS 61003 (D. Mass. Jun. 8, 2011). Thus, Plaintiff is not excused from his burden of showing he has standing merely because he has brought a putative class action.

**B.    Plaintiff Lacks Standing To Pursue FLSA Claims Against Defendants Because He Did Not Attend Or Participate In Interscholastic Athletics At Their Institutions.**

As noted above, Berger held that the plaintiffs therein lacked standing to sue any school other than the school they actually attended because their "connection to the other schools and the NCAA is far too tenuous to be considered an employment relationship," such that they did not "plausibly allege[] any injury traceable to, or redressable by, any defendant other than Penn." 843 F.3d at 289. As such, the Court summarily dismissed the claims against all of the other named colleges and universities, along with the NCAA, for lack of standing.

This Court should dismiss the Defendants from this action for the same reason. It is axiomatic that a plaintiff cannot recover from an entity under the FLSA unless there was an employer-employee relationship. Id., quoting Roman, 970 F. Supp. 2d at 412; Davis v. Abington Mem'l Hosp., 2012 U.S. Dist. LEXIS 111160, at *17 (E.D. Pa. Aug. 7, 2012), aff'd, 765 F.3d 236 (3d Cir. 2014). Courts do not hesitate to dismiss FLSA claims where the standing elements of "traceability" and "redressability" are lacking. See Cavallaro, 971 F. Supp. 2d at 146-50 (dismissing FLSA claims against corporations other than plaintiff's actual employer for lack of

standing); Roman, 970 F. Supp. 2d at 416 (same); White v. Classic Dining Acquisition Corp., 2012 U.S. Dist. LEXIS 52215, at *6-7 (S.D. Ind. Apr. 13, 2012) (same); Lucas v. BMS Enters., Inc., 2010 U.S. Dist. LEXIS 66050, at *4-13 (N.D. Tex. Jul. 1, 2010) (same, after raising the issue *sua sponte*).

To be sure, Defendants deny there was any employer-employee relationship between Plaintiff and any named defendant in this action for the reasons set forth in Point I hereof, including the compelling decisions in Berger and Dawson. There can be no doubt, however, that Plaintiff was not "employed" by any of the Defendants for purposes of the FLSA. After Plaintiff's bare legal conclusions about joint employment are stripped away, in accordance with Fed. R. Civ. P. 12(b)(6), see Bistrian, 696 F.3d at 365, Plaintiff claims only that:  (a) he was "a Scholarship Athlete on the Football roster of Villanova University during the academic year 2014-2015"; and (b) "[d]uring the practice and playing season, [he] worked as a Scholarship Athlete at [Villanova at] least 20 hours per week supervised by NCAA athletics supervisory staff. See Complaint, ¶¶ 20, 176. Plaintiff's Complaint contains no factual allegations about having played football for any other school, being directed by any other school, or receiving scholarship monies or financial aid from any other school, including any of the Defendants. He also fails to plead facts which plausibly show that he has suffered any injury that is traceable to Defendants.

Instead, Plaintiff's claims against Defendants appear to hinge on the proposition that merely belonging to the NCAA is sufficient to render an institution an FLSA employer of not only its own student athletes, but also of every student athlete at every other school that belongs to the NCAA. That proposition simply does not comport with reality, economic or otherwise. The Berger Court's dismissal of all schools except Penn – the only school attended

by the plaintiffs therein – reflects that common sense notion.  Not surprisingly, it appears that no court in the country has endorsed the proposition advanced by Plaintiff.  Even if a court were inclined to view that type of claim as a theoretical possibility, this case presents an especially poor vehicle for invoking that concept given that the relationships at issue do not come close to approximating employment in the first place.  Unless Plaintiff can demonstrate an employment relationship under the FLSA with each and everyone one of the defendants in this action, which he cannot, he lacks standing to sue any of those entities, including Defendants.  See, e.g., Cavallaro, 971 F. Supp. 2d at 146-50; Roman, 970 F. Supp. 2d at 416; White, 2012 U.S. Dist. LEXIS 52215, at *6-7.

Joint employer principles do not alter the inescapable conclusion that Plaintiff lacks standing to pursue any claims against Defendants.  Joint employment analyses, like analyses as to whether an employment relationship exists under the FLSA, are based on economic realities.  The Third Circuit has previously recognized that "[b]ecause of the uniqueness of the FLSA, a determination of joint employment 'must be based on a consideration of the total employment situation and the economic realities of the work relationship."  Enterprise, 683 F.3d at 469, quoting Bonnette v. Cal. Health & Welfare Agency, 704 F.2d 1465, 1470 (9th Cir. 1981).  The joint employment determination requires the court to consider several factors, including whether the alleged employer has:  (a) the authority to hire and fire employees; (b) the authority to promulgate work rules and assignments and set conditions of employment, including compensation, benefits, and hours; (c) day-to-day supervisory authority, including authority over employee discipline; and (d) control of employee records, including payroll, insurance, taxes, and the like.  Id.  Those factors are not to be blindly applied, however.  Id., quoting Bonnette, 704 F.2d at 1469-70.  Rather, a joint employment determination "must be

based on a consideration of the total employment situation and the economic realities of the work relationship." Id., quoting Bonnette, 704 F.2d at 1470-71.

Application of the joint employment considerations confirms that Defendants are not joint employers of Plaintiff, even if Villanova is considered his employer (which it is not for the reasons set forth above). Plaintiff has not alleged any facts related to any of the joint employer factors. In particular, there are no allegations that any Defendant:

(a) Was authorized to "hire" Plaintiff, whether that means granting Plaintiff admission to Villanova as a student or determining whether he could play for Villanova's football team;[9]

(b) Was authorized to "fire" Plaintiff, whether that means expelling Plaintiff from Villanova or determining that he should be removed from Villanova's football team;

(c) Was authorized to control Plaintiff's conduct, whether through the institution and enforcement of rules that applied how he performed his academic, football, personal, or other obligations, or by other means;

(d) Was authorized to control Plaintiff's itinerary or schedule, including, *inter alia*, the dates and times he appeared for class, football activities, or other extracurricular activities;

(e) Was authorized to control any benefits to which Plaintiff may have received, or have been eligible to receive, from Villanova;

(f) Supervised Plaintiff, whether academically or in connection with his football, personal, or other activities;

(g) Exercised, or was authorized to exercise, any disciplinary authority over Plaintiff, including but not limited to expulsion from Villanova and/or removal from Villanova's football team;

(h) Controlled any records relating to Plaintiff;

(i) Maintained any records relating to Plaintiff; or

(j) Had any obligation to maintain records relating to Plaintiff.

---

[9] The awkwardness of the application of the joint employer factors to a student athlete only confirms that there is no legal basis for finding a student athlete to be "employed" by Defendants.

In other words, Plaintiff has failed to allege that he suffered an injury in fact which, as a matter of law, is traceable to and/or redressable by Defendants.  As in <u>Berger</u>, any connection between Plaintiff and Defendants is "far too tenuous to be considered an employment relationship" that would support a finding of standing.  843 F.3d at 289.  As a matter of law, therefore, he cannot maintain an FLSA claim against any Defendant, and his Complaint should be dismissed.

Furthermore, Plaintiff's Complaint should be dismissed with prejudice, without leave to replead.  Plaintiff clearly cannot plead any facts that would support findings of standing or joint employer status against Defendants, particularly in light of the compelling decisions in <u>Berger</u> and <u>Dawson</u> and the economic reality that Defendants have no cognizable connection to any alleged (but non-existent) employment relationship between Plaintiff and Villanova.  <u>See</u>, <u>e.g.</u>, <u>Cavallaro</u>, 971 F. Supp. 2d at 146-50; <u>Roman</u>, 970 F. Supp. 2d at 416; <u>White</u>, 2012 U.S. Dist. LEXIS 52215, at *6-7.  Therefore, it can definitively be said that any amendment would be futile.  <u>See</u> <u>Massarsky</u>, 706 F.2d at 125; <u>see also</u> <u>Dawson</u>, 250 F. Supp. 3d at 409 ("Because Dawson's complaint is based on an untenable legal theory, amendment would be futile.  The complaint is thus dismissed without leave to amend.").

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court enter the enclosed Order dismissing Plaintiff's Complaint against Defendants with prejudice, as a matter of law, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully submitted,

JACKSON LEWIS P.C.
Attorneys for Defendants Bucknell University, Drexel University, Lafayette College, and Lehigh University

By:___ /s/ Stephanie J. Peet_____
         Stephanie J. Peet, Esq.
         Michael D. Ridenour, Esq.

Dated:  December 28, 2017

4842-9889-0584, v. 2