Paul L. McDonald
P L MCDONALD LAW LLC
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19103
Telephone:  (267) 238-3835
Facsimile:  (267) 238-3801
Email:        paul@plmcdonaldlaw.com

*Counsel for Plaintiff and
the Proposed Collective*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWRENCE "POPPY" LIVERS,<br><br>                         Plaintiff,<br><br>    v.<br><br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, a/k/a the NCAA, et al.<br><br>                         Defendants. | Civil Action No. 2:17-cv-04271-MMB |

## PLAINTIFF'S MOTION FOR SANCTIONS
## FOR FAILURE TO COMPLY WITH RULE 11(b)

Plaintiff, by undersigned counsel, moves for the imposition of sanctions under

Rule 11(c)(4) against Defense Counsel, and Defendants,[1] for violations of Rule 11(b) related

to Defendants' Motions to Dismiss (ECF 23 and 24).[2]

---

[1]    Constangy, Brooks, Smith & Prophete, LLP represents the NCAA; Duquesne University; Fairleigh Dickinson University; La Salle University; Monmouth University; Rider University; Robert Morris University; Seton Hall University; Saint Francis University; Saint Joseph's University; St. Peter's University; Villanova University; University of Delaware; Pennsylvania State University; University of Pittsburgh; Rutgers, State University of New Jersey; and Temple University.

Jackson Lewis P.C. represents Bucknell University; Drexel University; Lafayette College; and Lehigh University.

[2]    Prior to filing this Motion for Sanctions, Plaintiff Counsel served a copy of a draft motion, substantially in the same form, on Defense Counsel under Rule 5(b) *via* U.S. Postal Service Priority Mail and electronic mail on December 29, 2017.  Plaintiff Counsel then served a copy of a slightly revised motion on January 2, 2018 *via* the same means.  Plaintiff Counsel delayed filing this motion with the Court for 21 days to provide Defense Counsel "safe harbor" to withdraw, or appropriately correct, Defendants' Motions to Dismiss, which Defense Counsel failed to do.

## INTRODUCTION

Under Rule 11(b)(2), legal contentions presented by defense counsel in a motion, on paper and/or in oral argument, must be warranted by: (i) existing law; (ii) a nonfrivolous argument for extending, modifying, or reversing existing law; or (iii) a nonfrivolous argument for establishing new law.  The standard for compliance is objective, and failure to comply subjects defense counsel to a range of monetary and nonmonetary sanctions under Rule 11(c)(4).

If, before filing or arguing a motion, a reasonable inquiry would have revealed that the legal contentions presented did **not** comply with Rule 11(b)(2), then defense counsel, *and defendant parties*, could also be sanctioned under Rule 11(c)(4) for having presented the legal contentions for an improper purpose, *e.g.*, to "cause unnecessary delay, or needlessly increase the cost of litigation," in violation of Rule 11(b)(1).

In *Amboy Bancorporation v. Jenkins & Gilchrist*, Civil Action No. 02-CV-5410, 2007 U.S. Dist. LEXIS 68831, at *8-9 (D.N.J. Sept. 14, 2007), the district court explained:

> A legal contention is not warranted by existing law if based on legal theories plainly foreclosed by established legal principles and authoritative precedent. When existing law does not support the relief sought, the advocate is required to state expressly that he or she is arguing for a reversal or change of law and present a nonfrivolous argument in support of that position.

(internal citations omitted).

Existing law in the Third Circuit and authoritative Supreme Court precedents governing Rule 12(b)(6) motions to dismiss claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (2007), ("FLSA") are clear and well-settled:

*First*, employee status is a fact-intensive inquiry, requiring application of discovery to a multi-factor employee test, and, thus, is **not** ripe for determination on a motion to dismiss.  *See, e.g.*, *Mitchell v. Lancaster Milk Co.*, 185 F. Supp. 66, 69-70 (M.D. Pa. 1960).

*Second*, unpaid prison labor is the *only* exception to the fact-intensive nature of employee status.  The *Thirteenth Amendment* precludes FLSA claims made by prisoners. Because the *Thirteenth Amendment* permits involuntary servitude as punishment for crime,[3] a prisoner **cannot** prove any set of facts, applied to any multi-factor employee test, to establish employee status under federal laws, such as the FLSA.  *See, e.g.*, *Tourscher v. McCullough*, 184 F.3d 236 (3d Cir. 1999).

*Third*, a defendant **cannot** preclude FLSA claims, and unilaterally "opt-out" of FLSA coverage, based on its *self-serving* characterization of its relationship to plaintiff. To the contrary, in order to determine the "economic reality" of that relationship, and plaintiff's employee status, discovery must be applied to a multi-factor employee test.  *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985) (associates characterized as "volunteers" by a nonprofit religious foundation, who testified that they did not expect, or desire, to be paid by the foundation, nonetheless must be paid because facts satisfied a multi-factor employee test).

*Fourth*, **non**-regulatory guidelines of the U.S. Department of Labor ("DOL") are "not controlling upon the courts," *i.e.*, are **not** dispositive, and, therefore, **cannot** preclude FLSA claims.  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 139-40, 65 S. Ct. 161 (1944).

For reasons discussed herein, the legal contentions in Defendants' Motions to Dismiss are directly contrary to existing law in the Third Circuit and Supreme Court.

Because Defense Counsel have failed to "state expressly that he or she is arguing for a reversal or change of law," **no** further analysis under Rule 11(b)(2) is required if this Court determines that their legal contentions are **not** warranted by existing law. *See Amboy Bancorporation*, 2007 U.S. Dist. LEXIS 68831, at *8-9.

---

[3]   The *Thirteenth Amendment* reads, in pertinent part: "Neither slavery nor involuntary servitude, except as punishment for crime whereof the party shall have been duly convicted, shall exist within the United States…."

Notwithstanding Defense Counsel's failure to state expressly that they are arguing for a reversal or change of law, as required under Rule 11(b)(2), the legal contentions in Defendants' Motions to Dismiss, if credited, would radically reverse or change law.

From among *all* reported FLSA cases, across *all* Circuits, Defense Counsel offer the *single* case – *Berger v. NCAA,* 843 F.3d 285 (7th Cir. 2016) – and the *only* case that follows *Berger* – *Dawson v. NCAA*, 250 F.Supp.3d 401 (N.D. Cal. 2017) – in which any court has:

- granted a motion to dismiss a ***non***-prisoner's FLSA claim by relying on unpaid prison labor cases[4] – in direct contradiction to authoritative precedents in 11 Circuits holding that only a prisoner's FLSA claim is precluded by the *Thirteenth Amendment*'s solitary exception for involuntary servitude as punishment for crime;

- granted a motion to dismiss a FLSA claim by rejecting the fact-intensive nature of employee status and application of discovery to a multi-factor employee test – in direct contradiction to authoritative precedents in 11 Circuits; and

- granted a motion to dismiss a FLSA claim by conferring claim preclusion on a defendant's *self-serving* characterization of plaintiff's employee status – in direct contradiction to Supreme Court precedent.

Defense Counsel have offered **no** nonfrivolous argument for this Court to join these two outliers and radically reverse or change law in the Third Circuit.

Defense Counsel's reliance on *Berger* and *Dawson* is particularly cynical because the radical departures from well-settled law in both cases had been precipitated at the urging of the *same* counsel: Jackson Lewis in *Berger*, and then Constangy in *Dawson*.  Having, in effect, "gotten away with" sanctionable conduct before, Defense Counsel double down, while the NCAA triples down.[5]

---

[4]   *Berger* relies on the unpaid prison labor case *Vanskike v. Peters,* 974 F.2d 806 (7th Cir. 1992), and *Dawson* relies on the unpaid prison labor case *Hale v. Arizona*, 993 F.2d 1387 (9th Cir. 1993), *which itself relies on Vanskike.*

[5]   Defense Counsel also well know this Complaint differs from *Berger* and *Dawson.*

The collective, here, only includes Scholarship Athletes, and does **not** address the status of "walk-ons," *i.e.*, student athletes who are **not** obligated to, and controlled by, schools pursuant to scholarship agreements.  The plaintiffs in *Berger* were "walk-ons" at the University of Pennsylvania.

This Complaint sues schools which employ the coaching and training staff who daily supervise Scholarship Athletes. By contrast, *Dawson* sued a conference (Pac-12), which does **not** employ coaching and training staff and, thus, is too far removed from daily supervision to be a cognizable employer.

For all these reasons, and those discussed herein, Defense Counsel have violated Rule 11(b)(2) by filing a legally unsupportable motion, and Defense Counsel and Defendants have violated Rule 11(b)(1) by filing a motion for the improper purpose of causing unnecessary delay and/or needlessly increasing the cost of litigation.

## I.   RULE 11(b) LEGAL STANDARDS

Sanctions are appropriate if a court determines that Rule 11(b) has been violated.

Under Rule 11(b), an attorney filing, or arguing, a motion "certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

> (1) the motion "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;" and
>
> (2) claims, defenses, and other legal contentions made in the motion "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."

In considering potential violations of Rule 11(b)(2):

> Courts must apply an objective standard of "reasonableness under the circumstances." Thus, this Court "must determine whether a competent attorney who conducted a reasonable investigation into the facts and law pertinent to the case would have determined that the allegations … were well grounded in law and fact." Further, "no proof of subjective bad faith is required to levy sanctions."

*In re Cendant Corp. Derivative Action Litig.*, 96 F. Supp. 2d 403, 405 (D.N.J. 2000) (internal citations omitted).

The operative objective standard of Rule 11(b)(2) "is more stringent than the original good faith formula and thus it is expected that a greater range of circumstances will trigger its violation." *Lieb v. Topstone Indus.*, 788 F.2d 151, 157 (3d Cir. 1986).

In *Amboy Bancorporation*, 2007 U.S. Dist. LEXIS 68831, at *8-9, the District of New Jersey explained:

> A legal contention is not warranted by existing law if based on legal theories plainly foreclosed by established legal principles and authoritative precedent. When existing law does not support the relief sought, the advocate is required to state expressly that he or she is arguing for a reversal or change of law and present a nonfrivolous argument in support of that position.

(internal citations omitted).

The District of New Jersey has also cautioned:

> An attorney cannot simply ignore legal precedent in advancing claims in a federal court. More is required than mere intransigence and a refusal to yield to the light of reason. Discretion and judgment are as much a part of effective advocacy as zeal. Rule 11 leaves breathing room for creative advocacy. It does not, however, tolerate frivolity or unprofessionalism.

*Brunner v. AlliedSignal, Inc.*, 198 F.R.D. 612, 618 (D.N.J. 2001).

If "a competent attorney who conducted a reasonable investigation into the facts and law pertinent" would have concluded that the legal contentions presented did **not** comply with Rule 11(b)(2), then defense counsel, *and defendant parties*, could also be sanctioned for having presented legal contentions for an improper purpose, *e.g.*, to "cause unnecessary delay, or needlessly increase the cost of litigation," in violation of Rule 11(b)(1). *See, e.g., In re Cendant Corp. Derivative Action Litig.*, 96 F. Supp. 2d at 406-407 (sanctions imposed for violating both Rules 11(b)(1) and 11(b)(2)).

In considering potential violations of Rule 11(b)(1):

> That test, too, is an objective one. The pleader may not escape liability because he did not intend to bring about additional delay or expense. If reasonable preparatory steps would have avoided those consequences, sanctions are appropriate.

*Lieb*, 788 F.2d at 157.

Sanctions properly include "an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation," Rule 11(c)(4), such as those related to bringing the Rule 11 motion for sanctions *and* opposing the underlying motion. *See, e.g., Amboy Bancorporation,* 2007 U.S. Dist. LEXIS 68831, at *22.

Neither bad faith, nor willfulness, is a prerequisite to sanction. But, "[c]onsideration of the 'willfulness' of the offending party's actions is … an equitable consideration, and thus, remains as a mitigating factor in the calculation of monetary compensation owed by lawyers who are found to have violated [] Rule 11." *See Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191, 197 n.6 (3d Cir. 1988).

Furthermore, as with the conduct of a lawyer who acted in bad faith, "the conduct of an experienced lawyer … is more apt to invite assessment of a substantial penalty than that of a less experienced or merely negligent one." *Lieb*, 788 F.2d at 158.

## II.    EXISTING LAW IN THE THIRD CIRCUIT

### A. Employee Status Is a Fact-Intensive Inquiry *Not* Ripe for Determination on a Motion Dismiss

In the Third Circuit, employee status under the FLSA is a fact-intensive inquiry, requiring application of discovery to a multi-factor employee test, and, thus, is **not** ripe for determination on a motion to dismiss. *See, e.g.*, *Mitchell*, 185 F. Supp. at 69-70.

The *Mitchell* court broadly affirmed that FLSA claims require fact-intensive inquiries:

> In *Stratton v. Farmers Produce Co.,* 134 F.2d 825, 827 (8th Cir. 1943), the court held that in actions under the Fair Labor Standards Act there is a special necessity "for having detailed knowledge of all pertinent facts relative to the nature of an employer's business and of the work done for him by an employee, before attempting to reach a conclusion as to whether the employee is or is not entitled to the (wage and hour) benefits of the Act."
>
> In *McComb v. Johnson*, 174 F.2d 833, 834 (8th Cir. 1949), in reversing the District Court which had dismissed an action under this Act because the complaint failed to state a claim upon which relief could be granted, the court stated, *inter alia*:
>
> > "He (the plaintiff) may not be able to establish the claims stated in his complaint, but we think he is, at least, entitled to make the attempt. The issues tendered by the complaint are too important and far reaching to be decided upon an assumed state of facts gleaned from a pleading. The District Court's prognostication of the outcome of this case may eventually prove to be correct, but it was premature and based upon indefinite inferences

> which may have no basis in fact. We have twice
> before had occasion to point out the impropriety
> of deciding questions of coverage under the
> Fair Labor Standards Act upon motions to dismiss
> … The futility of attempting to terminate a lawsuit
> by granting such a motion, unless it presents a
> simple, definite, clear-cut issue of law, has been
> pointed out by this Court in many cases."

*Id.*

In *Sherman v. Am. Eagle Express, Inc.*, No. 09-575, 2012 U.S. Dist. LEXIS 30728, at *33-35 (E.D. Pa. Mar. 8, 2012), this Court affirmed that employee status under the FLSA is a fact-intensive inquiry, noting that Pennsylvania Commonwealth Courts had "adopted the case law and test utilized by federal courts under the Fair Labor Standards Act (FLSA)" and "undertake a fact-intensive, multi-factor examination to determine whether a worker is an employee or an independent contractor," *i.e.*, a "economic realities test."

Existing law in the Third Circuit is consistent with established legal principles and authoritative precedents in 10 other Circuits, including, but not limited to:

**First Circuit**

*McLaughlin v. Bos. Harbor Cruise Lines, Inc.*, 419 F.3d 47, 51 (1st Cir. 2005):

> Any interpretation of the FLSA or its regulations, at this stage of
> the proceedings, would be error because it would be premature.
> We need not and do not engage in any such interpretation. In
> particular, we decline the Secretary's invitation for us to adopt
> her preferred interpretation of the regulations now, before any
> factual context has been developed.  The statute, the regulations,
> and the case law, by contrast, outline an approach that is quite
> fact-intensive.

**Second Circuit**

*Solis v. Gen. Interior Sys.*, No. 5:08-CV-0823, 2012 U.S. Dist. LEXIS 77041, at *10-11 (N.D.N.Y. June 1, 2012):

> In evaluating the factors under the economic reality test,
> historical findings of fact underlying each factor as well as
> findings of fact as to the existence and degree of each factor must
> be made. Only after this fact intensive inquiry may a legal
> conclusion be drawn regarding whether individuals are
> "employees" or independent contractors for purposes of the FLSA.

> The parties here dispute, by identifying contradictory evidence, or reasonable interpretations of same, virtually each factual conclusion underlying the factors of the economic reality test. Considering the fact intensive nature of the economic reality test, the court is unable to conclude at this time whether, as a matter of law, the individual workers at issue here are employees or independent contractors of Defendants.

(internal citations omitted).

### Fourth Circuit

*Sigala v. Abrof VA, Inc.*, No. GJH-15-1779, 2016 U.S. Dist. LEXIS 55174, at *17-19 (D. Md. Apr. 21, 2016):

> [T]o determine whether an individual is an employee or an independent contractor under the FLSA, the Court must look to the "economic realities" of the relationship between the worker and the employer by analyzing the six factors discussed by the Fourth Circuit in *Schultz v. Capital International Security, Inc.*, 466 F.3d 298 (4th Cir. 2006) ….

> [A]s the Court indicated in *Astorga*, the determination of whether Plaintiffs fall into the statutory definition of "employee," is one best made after discovery has been completed. *See Astorga*, 2015 U.S. Dist. LEXIS 63249, 2015 WL 2345519, at *4; *see also Zamora v. Washington Home Servs., LLC*, No. 1 l-CV-00831 AW, 2011 U.S. Dist. LEXIS 144298, 2011 WL 6297941, at *2 (D. Md. Dec. 15, 2011) (noting that question of whether an individual is a covered employee under FLSA is a "fact-intensive" inquiry).

### Fifth Circuit

*Dixon v. Local Express, Inc.*, No. 4:16-CV-2081, 2017 U.S. Dist. LEXIS 98711, at *4-5 (S.D. Tex. June 26, 2017):

> Because the district court's subsidiary findings in determining employee status are a fact intensive inquiry, a motion to dismiss is not appropriate at this stage in the litigation. The Court cannot make factual determinations at the motion-to-dismiss stage …. "a court must take the allegations as true, no matter how skeptical the court may be."

(internal citations omitted).

### Sixth Circuit

*Miller v. Stewart*, No. 15-14164, 2016 U.S. Dist. LEXIS 184913, at *8 (E.D. Mich. Dec. 13, 2016):

> It is also notable that the economic realities test is a fact-intensive inquiry that is unlikely to ever be decided on a motion to dismiss.

> This test under Michigan law and the WPA is exactly like the one used under federal employment statutes. For example, under FLSA, the courts look to this test ….
>
> Based on the foregoing, the determination of whether plaintiff is an employee may be made via summary judgment or trial, but not by way of a motion to dismiss.

### Eighth Circuit

*Smolnik v. Van Dyke*, No. 8:04CV401, 2006 U.S. Dist. LEXIS 32215, at *10 (D. Neb. May 19, 2006):

> Determining whether a party is an employee or an independent contractor requires a fact-intensive consideration of all aspects of the working relationship between the parties.

*See, also, Thornton v. Mainline Communs., LLC*, 157 F. Supp. 3d 844, 849 (E.D. Mo. 2016)

(citing a number of cases, and courts, determining whether a party is an employee or an

independent contractor, either at summary judgment or after bench trial: "It is clear from

the foregoing cases that the analysis is fact intensive.").

### Ninth Circuit

*Guy v. Casal Inst. of Nev.*, No. 2:13-cv-02263, 2016 U.S. Dist. LEXIS 113033, at *12-13 (D. Nev. Aug. 16, 2016):

> The Court also finds that the question of whether there is an employer/employee relationship is a fact-intensive question ….
>
> This is particularly true of the "economic realities" test, which applies here. In administering the economic reality test, courts are to consider the totality of the circumstances of the relationship …. Therefore, the Court does not find that Plaintiffs cannot as a matter of law, establish that they were employees under the FLSA merely because they were students enrolled at Aveda.

(internal citations omitted).

### Tenth Circuit

*Matrai v. AM Entm't, LLC*, No. 14-2022-SAC, 2015 U.S. Dist. LEXIS 48724, at *9-11 (D. Kan. Apr. 14, 2015):

> In determining whether an individual is an employee or an independent contractor for purposes of the FLSA, [the Tenth Circuit] uses the "economic realities" test ….
>
> "Th[e] [economic-reality] test is based upon the totality of the circumstances, and no one factor in isolation is dispositive" ….

Both parties urge the court to rely on FLSA cases involving other cable installers, some of which apply variants of the economic realities test. Some of those cases find installers to be employees, while others find installers to be independent contractors. But because of the fact-specific nature of the inquiry and the different procedural posture of some of those cases (summary judgment), those cases are not instructive.

Given the broad definition of "employer" under the FLSA … the Court finds that Plaintiffs have set forth sufficient facts to show that their motion to amend is not futile, and sufficient plausibility to withstand the motion to dismiss. Although those facts may ultimately prove insufficient to meet the economic realities test, they are sufficient at the pleading stage. The court notes that in other FLSA cases, DIRECTV has generally been unsuccessful in moving to dismiss on the basis that installers are independent contractors.

(internal citations omitted).

### Eleventh Circuit

*Peña v. Handy Wash, Inc.*, 28 F. Supp. 3d 1289, 1294-1302 (S.D. Fla. 2014):

Defendants insist the misclassification claims of Plaintiff and the proposed class will require highly individualized, fact-intensive analysis that defeats the efficiencies of collective treatment.

*****

The "economic realities" test is employed in FLSA cases to determine whether an individual is an employee versus an independent contractor for purposes of the Act."

*****

The Court is not persuaded an inherently individualized analysis "ill-suited to collective action treatment" is sure to result. ….

In the present case, it appears the majority of the economic realities factors can be assessed collectively ….

The six economic realities factors heavily overlap with the similarly-situated analysis already performed.

(internal citations omitted).

### D.C. Circuit

*Spellman v. Am. Eagle Express, Inc.*, 680 F. Supp. 2d 188, 192 (D.D.C. 2010):

[W]hereas here, Defendant asserts that the FLSA is wholly inapplicable because Plaintiffs are "independent contractors" exempt from the statute's scope … resolution of that issue will turn on the Court's application of a fact-intensive "economic reality" test after discovery.

**B. Prisoner Claims for Employee Status Are Precluded by the**
   ***Thirteenth Amendment*'s Solitary Exception for Involuntary Servitude**
   **As Punishment for Crime**

Because the *Thirteenth Amendment* permits involuntary servitude as punishment

for crime, a prisoner – *and only a prisoner* – **cannot** prove any set of facts, applied to

any multi-factor employee test, to establish employee status under the FLSA.

*Vanskike v.* Peters, 974 F.2d 806 (7th Cir. 1992) is authoritative precedent, cited in

11 Circuits,[6] including the Third Circuit. *See, e.g., Tourscher v. McCullough* (citing *Vanskike*

in dismissing prisoner's FLSA claim).

In *Vanskike*, the court held:

> [T]he relationship between the DOC [Department of
> Corrections] and a prisoner is far different from a traditional
> employer-employee relationship, because … inmate labor belongs
> to the institution. The *Thirteenth Amendment* excludes convicted
> criminals from the prohibition of involuntary servitude, so
> prisoners may be required to work.  Further, there is no
> Constitutional right to compensation for such work;
> compensation for prison labor is "by grace of the state" ….
>
> [L]iteral application of the *Bonnette* factors [*i.e.*, a multi-factor
> employee test] in the present context …. fail to capture the
> true nature of the relationship for essentially they presuppose a
> free labor situation …. [T]he *Thirteenth Amendment*'s specific
> exclusion of prisoner labor supports the idea that a prisoner
> performing required work for the prison is actually engaged in
> involuntary servitude, not employment ….
>
> Prisoners are essentially taken out of the national economy
> upon incarceration .... Because Vanskike's allegations reveal that
> he worked in the prison and for the DOC pursuant to penological
> work assignments, the economic reality is that he was not an
> "employee" under the FLSA.

*Id*. at 809-810.

---

[6]   *See* n.9, *infra*.

## III.   SUPREME COURT PRECEDENTS

### A.  A Defendant *Cannot* Preclude FLSA Claims Based on Its *Self-Serving* Characterization of Plaintiff's Employee Status because "Economic Reality" Is Determined by Applying Discovery to A Multi-Factor Employee Test

Supreme Court precedent establishes that a defendant **cannot** preclude FLSA claims,

and unilaterally "opt-out" of FLSA coverage, based on its *self-serving* characterization of

its relationship to plaintiff.

To the contrary, in order to determine the "economic reality" of that relationship, and

plaintiff's employee status, discovery must be applied to a multi-factor employee test.

Indeed, a person meeting criteria under a multi-factor employee test **cannot** even

*agree* to waive employee status and protections under the FLSA.[7]

---

[7]   Agreements, and adhesion contracts, to waive employee status and protections under the FLSA are often at issue when determining whether someone is an employee under the FLSA or an independent contractor outside FLSA coverage.

For example, in a colorful collective action filed by exotic dancers, a district court noted:

> The intent of the worker and the employer, and the label they use to describe their working relationship, does not control whether the worker is an employee or an independent contractor. *See Watson v. Graves*, 909 F.2d 1549,1554 (5th Cir. 1990) ("We must ... look to the substantive realities of the relationship, not to mere forms or labels ascribed to the laborer by those who would avoid coverage."); *Real v. Driscoll Strawberry Assocs., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979) ("[T]he subjective intent of the parties to a labor contract cannot override the economic realities reflected in the factors described above." (citing *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1315 (5th Cir. 1976); *Brennan v. Partida*, 492 F.2d 707, 709 (5th Cir. 1974)); *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F. Supp. 2d 569, 577 (D. Md. 2008) ("[N]either the subjective intent of the worker in forming the employment relationship nor the label affixed by the putative employer controls the question whether a worker is an employee under FLSA"); *Mathis v. Hous. Auth. of Umatilla Cnty.*, 242 F. Supp. 2d 777, 785 (D. Or. 2002) (recognizing that "it is 'well-settled that subjective intent cannot override the economic realities'") (quoting *Real*, 603 F.2d at 755). The fact that a worker and her employer use the "independent contractor" label does not determine the outcome of the economic realities test or the application of the FLSA. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729, 67 S. Ct. 1473, 91 L. Ed. 1772 (1947) ("[P]utting on an 'independent contractor' label does not take the worker from the protection of the [FLSA].").

*Coronado v. D N.W. Hous., Inc.*, No. H-13-2179, 2014 U.S. Dist. LEXIS 83763, at *6-7 (S.D. Tex. June 19, 2014).

In *Tony & Susan Alamo Found. v. Sec'y of Labor*, a nonprofit religious organization characterized associates as "volunteers" outside FLSA coverage.

But, a district court applied facts to a multi-factor employee test and determined that, in "economic reality," an employer-employee relationship existed within the meaning, and coverage, of the FLSA.

The Supreme Court affirmed, noting:

> An associate … "testified convincingly that she considered her work in the Foundation's businesses as part of her ministry," and that she did not work for material rewards. This same associate also testified that "no one ever expected any kind of compensation, and the thought is totally vexing to my soul."
>
> Nevertheless, these protestations, however sincere, cannot be dispositive. The test of employment under the Act is one of "economic reality" ….
>
> That the associates themselves vehemently protest coverage under the Act makes this case unusual, but the purposes of the Act require that it be applied even to those who would decline its protections. If an exception to the Act were carved out for employees willing to testify that they performed work "voluntarily," employers might be able to use superior bargaining power to coerce employees to make such assertions, or to waive their protections under the Act.

471 U.S. at 300-302.

### B. *Non*-Regulatory Guidelines of the U.S. Department of Labor *Cannot* Preclude FLSA Claims

Supreme Court precedent establishes that **non**-regulatory DOL guidelines are "not controlling upon the courts," *i.e.*, are **not** dispositive, and, therefore, **cannot** preclude FLSA claims.  *See Skidmore*, 323 U.S. at 140.

In *Skidmore*, the Supreme Court explained:

> [Non-regulatory guidelines] are not reached as a result of hearing adversary proceedings in which [DOL] finds facts from evidence and reaches conclusions of law from findings of fact.

> They are not, of course, conclusive, even in the cases with which they directly deal, much less in those to which they apply only by analogy. They do not constitute an interpretation of the Act or a standard for judging factual situations which binds a district court's processes, as an authoritative pronouncement of a higher court might do.

*Id.* at 139-40.

## IV.   SANCTIONABLE CONDUCT UNDER RULE 11 BY DEFENSE COUNSEL AND DEFENDANTS

### A.   Defense Counsel's Legal Contentions Must Be Warranted by Existing Law because They Have Failed to Expressly Advocate for a Reversal or Change of Law

In Defendants' Motions to Dismiss, Defense Counsel do **not** "state expressly that he or she is arguing for a reversal or change of law;" consequently, their legal contentions must be warranted by existing law in order to comply with Rule 11(b)(2). *See Amboy Bancorporation*, 2007 U.S. Dist. LEXIS 68831, at *8-9.

Notwithstanding Defense Counsel's failure to state expressly that they are arguing for a reversal or change of law, as required under Rule 11(b)(2), the legal contentions in Defendants' Motions to Dismiss, if credited, would radically reverse or change law.

So, Plaintiff addresses those legal contentions which would radically reverse or change law, below, without conceding that such contentions are properly before this Court – *because such contentions are **not*** – and for the limited purpose of demonstrating that Defense Counsel's legal contentions are, in any event, frivolous.

For reasons discussed, below, Defense Counsel's legal contentions are sanctionable for violating Rule 11(b)(2) –  and also for violating Rule 11(b)(1) because their violations of Rule 11(b)(2) are so unreasonable, *indeed willful*, as to raise a presumption of having been undertaken for the improper purpose of causing unnecessary delay and/or needlessly increasing the cost of litigation.

**B. Defense Counsel's Legal Contentions Are Directly Contrary to Existing Law and Plainly Foreclosed by Established Legal Principles and Authoritative Precedent**

In the foregoing Sections II and III, Plaintiff Counsel demonstrates that an experienced attorney, who conducted the reasonable investigation required by Rule 11(b), would have concluded that authoritative precedents of the Supreme Court and across 11 Circuits, including the Third Circuit, establish that:

- employee status under the FLSA is a fact-intensive inquiry, requiring application of discovery to a multi-factor employee test, and, thus, is **not** ripe for determination on a motion to dismiss;

- the particular facts and legal reasoning of unpaid prison labor cases – in which prisoner FLSA claims for employee status are precluded by the *Thirteenth Amendment*'s solitary exception for involuntary servitude as punishment for crime – are **not** analogous or applicable to FLSA claims of **non**-prisoners;

- a defendant **cannot** preclude FLSA claims, and unilaterally "opt-out" of FLSA coverage, based on its *self-serving* characterization of its relationship to plaintiff because the "economic reality" of that relationship, and plaintiff's employee status, are determined by applying discovery to a multi-factor employee test; and

- **non**-regulatory DOL guidelines **cannot** preclude FLSA claims.

Plaintiff Counsel provided Defense Counsel with a "review" of this well-settled law in Plaintiff Counsel's Rule 16 Pretrial Conference Letter to the Court, cc'ing Defense Counsel, dated November 17, 2017 – six (6) weeks *before* Defendants' Motions to Dismiss.  *See* Ex. 1.

In any event, such well-settled law could **not** have eluded reasonable investigation by Defense Counsel, who have some180 labor and employment attorneys across 23 offices of Constangy and some 750 labor and employment attorneys across 60 offices of Jackson Lewis.

It appears Defense Counsel opted to "simply ignore legal precedent," *see Brunner*, 198 F.R.D. at 618, fully aware "that the lion's share of [their] legal and factual contentions had no basis in either existing law or the evidence."  *See Hanoverian, Inc. v. Pa. Dep't of Envtl. Prot.*, Civil Action No. 1:07-cv-00658, 2008 U.S. Dist. LEXIS 28865, at *41-42 (M.D. Pa. Mar. 31, 2008).

Instead, from among *all* reported FLSA cases, across *all* Circuits, Defense Counsel offer the *single* case – *Berger v. NCAA* – and the *only* case that follows *Berger* – *Dawson v. NCAA* – in which any court has directly contradicted this well-settled law.

Rule 11(b)(2) obliges attorneys to make an objective, reasoned assessment of the applicability of a case before relying on it, including the consistency of its reasoning with existing law, established legal principles and authoritative precedent or the validity of its reasoning as grounds for a reversal or change of law.

Defense Counsel have offered **no** nonfrivolous argument for this Court to join the outliers of *Berger* and *Dawson* and radically reverse or change law in the Third Circuit.[8]

Defense Counsel's reliance on *Berger* and *Dawson* is particularly cynical because the radical departures from well-settled law in both cases had been precipitated at the urging of the *same* counsel: Jackson Lewis in *Berger*, and then Constangy in *Dawson*. Having, in effect, "gotten away with" sanctionable conduct before, Defense Counsel double down, while the NCAA triples down.

### 1. Defense Counsel's Reliance on *Berger* for Frivolous Arguments to Extend the Legal Rationale of Unpaid Prison Labor Cases to:

#### (i) Preclude FLSA Claims of *Non*-Prisoners; and
#### (ii) Reject the Fact-Intensive Nature of Employee Status and Application of Discovery to Multi-Factor Employee Tests

The *Berger* court *solely* relied on the unpaid prison labor case *Vanskike v. Peters* in affirming a Rule 12(b)(6) dismissal of employee status claims made by ***non***-scholarship NCAA Division I student athletes on behalf of all NCAA Division I student athletes:

> The [district] court then discussed our decision in ***Vanskike***, in which we rejected the strict application of a similar multifactor test in favor of a more flexible standard. **974 F.2d at 809**.

---

[8]   As noted in Section IV.A, *supra*, Defense Counsel have **not** even expressly asked this Court to do so as required for any such argument to comply with Rule 11(b)(2).

We have declined to apply multifactor tests in the employment setting when they "fail to capture the true nature of the relationship" between the alleged employee and the alleged employer. *Id.* In *Vanskike*, we considered whether an inmate at a state prison was an employee under the FLSA. *Id.* **at 806**. Like Appellants here, the inmate in *Vanskike* urged us to apply a multifactor test to determine whether an employment relationship existed. We rejected the application of that test because it was "not the most helpful guide in the situation presented." *Id.* **at 809**. Rather than follow a specific test, we examined the economic reality of the alleged employment relationship and concluded that the prisoner was not an employee. *Id.* **at 809-10**.

*****

We briefly conclude by addressing Appellants' argument that employment status is an inherently fact-intensive inquiry and thus should not be decided at the motion-to-dismiss stage. We reject this argument. Because we conclude, as a matter of law, that student athletes are not employees under the FLSA, no discovery or further development of the record could help Appellants. Appellants did not and could not allege facts, even taken as true, that give rise to a cause of action. ***See Vanskike*, 974 F.2d at 813 (affirming the district court's grant of a motion to dismiss because plaintiffs had failed to establish the existence of an employment relationship)**.

*Berger*, 843 F.3d at 291, 294.  (emphasis supplied).

But, for reasons discussed in foregoing Section II.B, the *Vanskike* court *only* concluded that a prisoner **cannot** prove any set of facts, applied to any multi-factor employee test, to establish employee status under the FLSA because the *Thirteenth Amendment* permits involuntary servitude as punishment for crime.

The *Dawson* court, in relying on *Berger*, similarly relied on *Vanskike*, as well as the unpaid prison labor case *Hale v. Arizona*, 993 F.2d 1387 (9th Cir. 1993), *which itself had relied on Vanskike.  See Dawson*, 250 F.Supp.3d at 405; *Hale*, 993 F.2d at 1394-1395 (relying upon *Vanskike*).

*Berger* and *Dawson* relied on *Vanskike* in clear error.

Clear error evidenced by: (i) a sampling of 24 reported cases, across 11 Circuits, citing *Vanskike* in dismissing detainee and prisoner claims for minimum wages under the FLSA;[9] (ii) an additional sampling of 25 reported cases, across five Circuits, citing *Vanskike* in dismissing *analogous* detainee and prisoner claims for modest work pay under other theories;[10]

[9]     *See, e.g.,* **Second Circuit:** *Danneskjold v. Hausrath*, 82 F.3d 37 (2d Cir. 1996) | **Third Circuit:** *Tourscher v. McCullough*, 184 F.3d 236 (3d Cir. 1999) | **Fourth Circuit:** *Harker v. State Use Indus.*, 990 F.2d 131 (4th Cir. 1993); *Robinson v. Commonwealth*, No. 1:12cv112, 2012 U.S. Dist. LEXIS 26474 (E.D. Va. Feb. 29, 2012) | **Fifth Circuit:** *Reimonenq v. Foti*, 72 F.3d 472 (5th Cir. 1996); *Loving v. Johnson*, No. 5:04-CV-305, 2005 U.S. Dist. LEXIS 42871 (N.D. Tex. May 9, 2005) | **Sixth Circuit:** *Abdullah v. Myers*, No. 94-5782, 1995 U.S. App. LEXIS 9061 (6th Cir. Apr. 13, 1995) | **Seventh Circuit:** *Sanders v. Hayden*, 544 F.3d 812 (7th Cir. 2008); *Bennett v. Frank*, 395 F.3d 409 (7th Cir. 2005); *Gibson v. Kronzer*, No. 93-1987, 1995 U.S. App. LEXIS 7814 (7th Cir. Apr. 5, 1995); *Douglas v. Aramark*, No. 1:09-cv-00912, 2009 U.S. Dist. LEXIS 113381 (S.D. Ind. Dec. 2, 2009); *Weissenberger v. Watters*, No. 07-C-415-C, 2007 U.S. Dist. LEXIS 57595 (W.D. Wis. Aug. 3, 2007); *Riley v. Doyle*, No. 06-C-574-C, 2006 U.S. Dist. LEXIS 75526 (W.D. Wis. Oct. 16, 2006); *George v. SC Data Ctr.*, 884 F. Supp. 329 (W.D. Wis. 1995); *George v. Badger State Indus. (BSI)*, 827 F. Supp. 584 (W.D. Wis. 1993) | **Eighth Circuit:** *McMaster v. Minnesota*, 819 F. Supp. 1429 (D. Minn. 1993), *aff'd*, 30 F.3d 976 (8th Cir. 1994) | **Ninth Circuit:** *Hale v. Arizona*, 993 F.2d 1387 (9th Cir. 1993); *Kasirem v. Mgmt. & Training Corp.*, No. 1:14-cv-00382, 2014 U.S. Dist. LEXIS 94031 (E.D. Cal. July 9, 2014); *Godfrey v. Kirkegard*, No. CV 12-00063, 2012 U.S. Dist. LEXIS 155702 (D. Mont. Aug. 7, 2012); *Gray v. Hernandez*, No. 08 CV 1147, 2011 U.S. Dist. LEXIS 29163 (S.D. Cal. Mar. 14, 2011) | **Tenth Circuit:** *Adams v. Neubauer*, 195 F. App'x 711 (10th Cir. 2006); *Lockett v. Neubauer*, No. 05-3209, 2005 U.S. Dist. LEXIS 36898 (D. Kan. Dec. 28, 2005) | **Eleventh Circuit:** *Villarreal v. Woodham*, 113 F.3d 202 (11th Cir. 1997) | **D.C. Circuit:** *Henthorn v. Dep't of Navy*, 308 U.S. App. D.C. 36, 29 F.3d 682 (1994).

[10]     *See, e.g.,* **Third Circuit:** *Wofford v. Lanigan*, Civil Action No. 14-5723, 2015 U.S. Dist. LEXIS 172583 (D.N.J. Dec. 28, 2015); *Planker v. Christie*, Civil Action No. 13-4464, 2015 U.S. Dist. LEXIS 6804 (D.N.J. Jan. 20, 2015); *Shabazz v. N.J. Comm'r of Dep't of Corr.*, Civil Action No. 13-4968, 2014 U.S. Dist. LEXIS 68294 (D.N.J. May 19, 2014); *Northrop v. Fed. Bureau of Prisons*, No. 1:CV-08-0746, 2008 U.S. Dist. LEXIS 124931 (M.D. Pa. May 12, 2008); *Carey v. Johnson*, Civil Action No. 06 - 1578, 2008 U.S. Dist. LEXIS 124933 (W.D. Pa. Feb. 19, 2008); *Banks v. Roberts*, No. 1:06-CV-01232, 2007 U.S. Dist. LEXIS 39658 (M.D. Pa. May 31, 2007) | **Fourth Circuit:** *Boyd v. Anderson*, Civil Action No. 7:10cv00556, 2010 U.S. Dist. LEXIS 133238 (W.D. Va. Dec. 15, 2010) | **Seventh Circuit:** *Beatty v. DeBruyn*, No. 94-3241, 1996 U.S. App. LEXIS 4030 (7th Cir. Feb. 21, 1996); *Pinzon v. Dep't of Corr.*, No. 16-CV-2088, 2016 U.S. Dist. LEXIS 68914 (C.D. Ill. May 26, 2016); *Stevens v. Rushville Treatment & Det. Ctr.*, No. 14-CV-3328, 2015 U.S. Dist. LEXIS 57264 (C.D. Ill. May 1, 2015); *Hamilton v. Dart*, No. 13 C 1053, 2013 U.S. Dist. LEXIS 43171 (N.D. Ill. Mar. 27, 2013); *Patterson v. Cook Cty. Dep't of Corr.*, No. 12 C 3619, 2012 U.S. Dist. LEXIS 82746 (N.D. Ill. June 7, 2012); *Baker v. Holinka*, No. 11-cv-533, 2012 U.S. Dist. LEXIS 29510 (W.D. Wis. Mar. 6, 2012); *Floyd v. Blaesing*, No. 11-CV-3444, 2012 U.S. Dist. LEXIS 16232 (C.D. Ill. Feb. 9, 2012); *Walker v. Saddler*, No. 11-3056, 2011 U.S. Dist. LEXIS 66421 (C.D. Ill. June 22, 2011); *Love v. Jaeger*, No. 06-C-722-C, 2007 U.S. Dist. LEXIS 7060 (W.D. Wis. Jan. 30, 2007); *Williams v. Case*, No. 06-C-599-C, 2006 U.S. Dist. LEXIS 86790 (W.D. Wis. Nov. 27, 2006); *Irby v. Thompson*, No. 03-C-346-C, 2003 U.S. Dist. LEXIS 24638 (W.D. Wis. Sep. 2, 2003); *Horton v. Thompson*, No. 02-C-0470-C, 2002 U.S. Dist. LEXIS 28940 (W.D. Wis. Sep. 23, 2002); *Borzych v. Litscher*, No. 02-C-0128-C, 2002 U.S. Dist. LEXIS 28995 (W.D. Wis. Mar. 14, 2002) | **Ninth Circuit:** *Mix v. Rosalez*, No. 1:15-cv-01060, 2016 U.S. Dist. LEXIS 65626 (E.D. Cal. May 17, 2016); *Williams v. Coleman*, No. 1:11-cv-01189, 2012 U.S. Dist. LEXIS 181874 (E.D. Cal. Dec. 26, 2012); *Allen v. Mayberg*, No. 1:06-CV-01801, 2010 U.S. Dist. LEXIS 15350 (E.D. Cal. Feb. 7, 2010); *McNeal v. Mayberg*, No. 1:07-cv-00851, 2008 U.S. Dist. LEXIS 101926 (E.D. Cal. Dec. 3, 2008) | **D.C. Circuit:** *Shipley v. Woolrich, Inc.*, 2009 U.S. Dist. LEXIS 10049.

and (iii) the countervailing absence of reported cases, other than *Berger* and *Dawson,* relying

on *Vanskike* to preclude FLSA claims of **non**-detainees or **non**-prisoners.

Clear error recognized by laypersons. *See, e.g.*, Sally Jenkins, "Are college athletes the

same as prisoners?  These judges seem to think so," The Washington Post, Jan. 5, 2017,[11]

attached hereto as Ex. 2.

*Incredibly*, Defense Counsel, in Defendants' Motion to Dismiss (ECF 24), at 6,

expressly rely on Third Circuit cases applying *Vanskike **to prisoners***.  See *Tourscher v.*

*McCullough* (citing *Vanskike* in dismissing prisoner's FLSA claim); *Wilkerson v. Samuels*,

524 F. App'x 776 (3d Cir. 2013) (citing *Vanskike* in dismissing prisoner's Title VII claim).[12]

### 2. Defense Counsel's Reliance on *Berger* for Frivolous Arguments to Confer FLSA Claim Preclusion on a Defendant's *Self-Serving* Characterization of Plaintiff's Employee Status

The *Berger* court cited *Tony & Susan Alamo Found.* for the proposition that the

broad definition of employee under the FLSA "does have its limits." *Berger*, 843 F.3d at 290.

But, the *Berger* court then contradicted the holding of *Tony & Susan Alamo Found.*,

discussed in foregoing Section III.A, and rejected application of discovery to a multi-factor

employee test to determine the "economic reality" of a defendant's relationship to plaintiff

and plaintiff's employee status.

Instead, the *Berger* court deferred to the NCAA's *self-serving* characterization of the

"economic reality" of its member schools' relationship to student athletes, *i.e.*, NCAA-*defined*

amateurism, and permitted member schools to unilaterally "opt-out" of FLSA coverage:

> [T]here exists "a revered tradition of amateurism in college
> sports." *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ.*
> *of Okla.*, 468 U.S. 85, 120, 104 S. Ct. 2948, 82 L. Ed. 2d 70
> (1984). That long-standing tradition defines the economic reality
> of the relationship between student athletes and their schools.

---

[11]   All hyperlinks incorporated by reference, and in blue underlined font, were last visited on December 28, 2017.

[12]   Indeed, Plaintiff Counsel's Rule 16 Letter, dated November 17, 2017, Ex. 1 at n.3, noted that *Vanskike* had been cited 14 times in the Third Circuit – *all cases involving claims **by prisoners***.

> To maintain this tradition of amateurism, the NCAA and its member universities and colleges have created an elaborate system of eligibility rules. *See O'Bannon v. Nat'l Collegiate Athletic Ass'n,* 802 F.3d 1049, 1054-55 (9th Cir. 2015) (outlining the development of these rules). We have held that these rules "define what it means to be an amateur or a student-athlete, and are therefore essential to the very existence of" collegiate athletics. *Agnew v. NCAA,* 683 F.3d 328, 343 (7th Cir. 2012). The multifactor test proposed by Appellants here simply does not take into account this tradition of amateurism or the reality of the student-athlete experience. In short, it "fail[s] to capture the true nature of the relationship" between student athletes and their schools and is not a "helpful guide." ***Vanskike,* 974 F.2d at 809.**

*Id.* at 291 (emphasis supplied).

In coming to this conclusion, in direct contradiction to *Tony & Susan Alamo Found.*, the *Berger* court **neither** cited a FLSA statutory exemption for NCAA-*defined* amateurism – there is **no** such exemption, as noted in Compl. ¶¶ 140-145[13] – **nor** case law interpreting the FLSA *other than Vanskike*.

Instead, *Berger* relied on *dicta* from antitrust cases,[14] which apply antitrust laws and analyses that are **neither** applicable to FLSA claims **nor** able to discharge obligations to comply with the FLSA.

*O'Bannon v. NCAA* is the one antitrust case cited in *Berger* that implicated a form of student athlete compensation for use of their names, images and likenesses ("NIL").

---

[13]   In any event, student employment by colleges is **not** considered "professional," and is **not** subject to FICA (Social Security and Medicare) taxes.  *See, e.g.,* Internal Revenue Code, 26 § 3121(b)(10) and 26 C.F.R. 31.3121(b)(10)-2).

[14]   In antitrust cases relied on by the *Berger* court, NCAA-*defined* amateurism rules prohibiting employee status and pay were **not** *even* at issue.

In *Agnew v. NCAA*, football players unsuccessfully challenged NCAA caps on the number of scholarships per school, sport, and academic year and a (former) prohibition on multi-year scholarships.

In *NCAA v. Bd. of Regents of Univ. of Okla.*, member schools *successfully* challenged a NCAA television plan that limited both the number of televised football games and a member school's freedom to sell broadcast rights for its games.  The Supreme Court did **not** defer to the NCAA's purported interest in maintaining a competitive balance, finding "[t]he television plan is not even arguably tailored to serve such an interest."  468 U.S. at 118-119.

*O'Bannon* proceeded to trial, after which the district court approved a $5,000 NIL

annual fee to be deferred, and held in trust, until after a student athlete left college.  *See*

*O'Bannon v. NCAA*, 7 F. Supp. 3d 955 (N.D. Cal. 2014), *aff'd in part and rev'd in part*,

802 F.3d 1049 (9th Cir. 2015).

On appeal, the Ninth Circuit reversed as to the $5,000 NIL annual fee, finding that,

under Rule of Reason antitrust analysis, there had been insufficient evidence to support the

fee amount as a substantially less restrictive alternative.

The only support for the $5,000 amount in the record had been an "off-hand" comment

by the NCAA's television sports consultant under cross-examination that "a million dollars

would trouble me and $5,000 wouldn't."  802 F.3d at 1077-1078.

But, the Ninth Circuit affirmed the district court's finding that NCAA-*defined*

amateurism rules violate antitrust law.

In so doing, the Ninth Circuit noted:

> The *Board of Regents* Court certainly discussed the NCAA's
> amateurism rules at great length, but it did not do so in order to
> pass upon the rules' merits, given that they were not before the
> Court. Rather, the Court discussed the amateurism rules for a
> different and particular purpose: to explain why NCAA rules
> should be analyzed under the Rule of Reason, rather than held to
> be illegal per se. The point was a significant one. Naked
> horizontal agreements among competitors to fix the price of a
> good or service, or to restrict their output, are usually condemned
> as per se unlawful. The *Board of Regents* Court decided,
> however, that because college sports could not exist without
> certain horizontal agreements, NCAA rules should not be held
> per se unlawful even when—like the television rules in *Board of
> Regents*—they appear to be pure "restraints on the ability of
> member institutions to compete in terms of price and output."
>
> *Board of Regents*, in other words, did not approve the NCAA's
> amateurism rules as categorically consistent with the Sherman
> Act. Rather, it held that, because many NCAA rules (among them,
> the amateurism rules) are part of the "character and quality of
> the [NCAA's] 'product,'" no NCAA rule should be invalidated
> without a Rule of Reason analysis. The Court's long encomium to
> amateurism, though impressive-sounding, was therefore dicta ….

> [W]e are not bound by *Board of Regents* to conclude that every NCAA rule that somehow relates to amateurism is automatically valid ….
>
> [The NCAA] asks us to hold that [its amateurism] rules are essentially exempt from antitrust scrutiny. Nothing in *Board of Regents* supports such an exemption. To say that the NCAA's amateurism rules are procompetitive, as *Board of Regents* did, is not to say that they are automatically *lawful*; a restraint that serves a procompetitive purpose can still be invalid under the Rule of Reason if a substantially less restrictive rule would further the same objectives equally well.

*Id.* at 1063-1064. (internal citations omitted).

In fact, *under antitrust analyses*, if all NCAA Division I member schools agreed (or had) to pay student athletes modest wages, there would be **no** anti-competitive consequences. There are *only* anti-competitive consequences if any member school(s) adopted a prohibition on such pay *unilaterally*, in effect conceding a recruiting edge to those agreeing to pay.

So, although antitrust cases are **not** applicable to FLSA claims, *O'Bannon* and *Bd. of Regents* (finding that a NCAA television plan violated antitrust law; *see* n.13, *supra*,) demonstrate that NCAA-*defined* rules are far from sacrosanct and **not** law.

Furthermore, "traditions" have a dubious record as legitimate bases for maintaining *status quo* denial of rights or protections *in lieu* of searching factual analyses under law. This has been most apparent in matters implicating the *Fourteenth Amendment*. But, as Defense Counsel well know, it has also been the case under the FLSA. Until recent litigation using multi-factor employee tests to differentiate internship programs under the FLSA as either paid or unpaid, nearly all internships had been presumed to be outside FLSA coverage, and had been unpaid, based on "tradition" alone.

### 3. Defense Counsel's Frivolous Arguments to Confer FLSA Claim Preclusion on *Non*-Regulatory DOL Guidelines

Even the outlier opinions in *Berger* and *Dawson* recognize that **non**-regulatory DOL guidelines "are not dispositive," *Berger*, 843 F.3d at 292, and "are not authoritative." *Dawson*, 250 F.Supp.3d at 407.

Still, Defense Counsel opt to ignore *Skidmore*, discussed in foregoing Section III.B, and argue that their interpretation of DOL Field Operations Handbook ("FOH") §10b03(e) (1993) precludes the FLSA claims of NCAA Division I scholarship athletes for employee status.

Setting aside, for the moment, that **no** further analysis is required because *Skidmore* plainly forecloses Defense Counsel's argument, further scrutiny of Defense Counsel's legal, and factual, contentions demonstrates their bad faith.

DOL FOH §10b03(e) lists student-run groups that ordinarily do **not** implicate employer-employee relationships with colleges: "dramatics, publications, glee clubs, bands, choirs, debate, radio stations, intramural and interscholastic athletics."

It is apparent that colleges exercise insufficient control over student-run groups to create an employer-employee relationship because, by definition, students are solely or principally responsible for student-run group leadership, organization and decision-making. If there is any faculty involvement – and in most student-run groups there is none – it is in an advisory capacity, **not** supervisory, and is an off- or extra-duty, **not** a full-time duty.

Student-run group directories list Club Sports as *student-run* interscholastic athletics. Club Sports predate the NCAA, *see, e.g.*, Brown University Club Sports Overview ("Club Sports have been in existence since the early nineteenth century"), and far outnumber NCAA sports in prevalence and participants. *See, e.g.*, Bill Pennington, "Rise of College Club Teams Creates a Whole New Level of Success," N.Y. Times, Dec. 2, 2008, attached hereto as Ex. 3 (in 2008, an estimated two million students participated in Club Sports compared with about 430,000 in sports regulated by the NCAA and National Association of Intercollegiate Athletics, *combined*).

By contrast to student-run groups, NCAA-regulated sports, like work study programs, are strictly supervised by full-time college staff. *Both even have timesheets maintained by staff.*

Facts related to this contrast of student-run groups to NCAA-regulated sports and work study programs are set forth in Compl. ¶¶ 95-101.

Undeterred by "Sesame Street" logic, *i.e.*, "one of these things is not like the others," Defense Counsel argue for an interpretation of DOL FOH §10b03(e) that includes NCAA-regulated sports among student-run groups because NCAA-regulated sports are, *generically*, "interscholastic athletics."

Defense Counsel insist that the DOL shares this interpretation.

But, there is **no** *record* that the DOL has ever considered this specific question, let alone under prevailing conditions of big business that is NCAA-regulated sports *today*.[15]

In the absence of any *record* produced by the DOL and submitted by Defendants as exhibits

---

[15]   Defense Counsel contend that an absence of DOL enforcement actions, thus far, in the arena of NCAA-related sports is evidence of DOL acquiescence to the *status quo*.

DOL enforcement, constrained by limited resources and consequential prioritization, is discretionary not mandatory. Defense Counsel well know this. Indeed, they *profit* from DOL reliance on private litigants to develop factual records and enforce provisions of the FLSA, as, for example, in civil litigation differentiating internship programs under the FLSA as either paid or unpaid.

Regarding non-regulatory DOL internship guidelines, ProPublica reported:

> [T]he Labor Department has not made enforcing its guidelines for unpaid internships a priority ….

> Instead of proactively investigating employers that advertise illegal internships, the department has decided to rely on complaints – even though the agency admits unpaid interns are hesitant to complain, for fear of endangering their future career prospects.

> "[The Wage and Hour Division] does not have a strategic enforcement initiative focused on unpaid interns," a department spokesman wrote.

> "Our investigators focus on … industries such as construction, janitorial, agriculture, and restaurants. That will continue to be our focus."

> *****

> As the vice president of the Economic Policy Institute, [Ross] Eisenbrey says he has pushed the Labor Department to root out illegal internships by scrutinizing industries such as fashion, media and film. But the agency has decided to expend its resources elsewhere.

> To be sure, the Labor Department has a finite amount of resources. With only about 1,000 investigators, the agency must monitor 7.3 million workplaces and enforce labor laws that protect 135 million employees.

Kara Brandeisky and Jeremy B. Merrill, "How the Labor Department Has Let Companies Off the Hook for Unpaid Internships," ProPublica, Apr. 9, 2014.

to show (i) specific consideration of distinctions between student-run groups (incl.
interscholastic Club Sports) and NCAA-regulated sports and (ii) "thoroughness evident in
its consideration, the validity of its reasoning [and] its consistency with earlier and later
pronouncements," Defense Counsel's "interpretation" lacks any power to persuade at
summary judgment or trial.[16]  *See Skidmore*, 323 U.S. at 140.

Moreover, as Defense Counsel well know, the legal interpretative maxim of *noscitur a
sociis* ("a word is known by the company it keeps") requires the *opposite* interpretation, *i.e.*,
including interscholastic Club Sports in the list of student-run groups in DOL FOH
§10b03(e), *but excluding NCAA-regulated sports.  See, e.g., Novartis Corp. v. Teva Pharms.
USA, Inc.*, 565 F. Supp. 2d 595, 613 (D.N.J. 2008) (*noscitur a sociis* means "which of various
possible meanings a word should be given must be determined in a manner that makes it
'fit' with the words with which it is closely associated."); *Thompson v. Ross*, 2:10-cv-479,
2010 U.S. Dist. LEXIS 103507 at *12 (W.D. Pa. Sept. 30, 2010) ("The interpretive maxim
*noscitur a sociis* suggests 'different clauses of the same sentence' should be presumed 'to
embrace the subject matter of the sentence.'")

Most damning is the fact that the "interpretation" Defense Counsel urge this Court
to credit, and rely on to preclude FLSA claims of NCAA Division I scholarship athletes, is in
direct contradiction to Defendants' admissions and policies published on their websites.

---

[16]   Indeed, Defense Counsel well know courts consider the persuasiveness of **non**-regulatory
guidelines at summary judgment or trial, ***not on a motion to dismiss***, as evidenced by cases they cite.
*See, e.g., Hill v. Del. N. Cos. Sportservice*, 838 F.3d 281 (2d Cir. 2016) (summary judgment); *Newman
v. Advanced Tech. Innovation Corp.*, 749 F.3d 33 (1st Cir. 2014) (summary judgment denied); *Fast v.
Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) (summary judgment denied); *Gagnon v. United
Technisource Inc.*, 607 F.3d 1036 (5th Cir. 2010) (summary judgment for plaintiff); *AT&T Corp. v.
Core Communs., Inc.*, 806 F.3d 715 (3d Cir. 2015) (summary judgment for plaintiffs); *Friedrich v. U.S.
Comput. Servs.*, 974 F.2d 409 (3d Cir. 1992) (summary judgment); *Hall v. Guardsmark, LLC*, Civil
Action No. 11-213, 2013 U.S. Dist. LEXIS 129490 (W.D. Pa. Sep. 11, 2013) (summary judgment
granted in part, and denied in part); *Morgan v. Family Dollar Stores*, 551 F.3d 1233 (11th Cir. 2008)
(trial); *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010) (trial); *Zellagui v. MCD
Pizza, Inc.*, 59 F. Supp. 3d 712 (E.D. Pa. 2014) (damages for plaintiffs); *Marsh v. J. Alexander's LLC*,
869 F.3d 1108 (9th Cir. 2017) (dismissal vacated).

Defendants do **not** include NCAA-regulated sports in student-run group directories, *but* do distinguish *student-run* interscholastic Club Sports from NCAA-regulated sports in great detail. *See* Compl. ¶ 100; Defendant NCAA Division I Websites | Student-Run Interscholastic Club Sports v. NCAA-Regulated Sports, attached hereto as Summary Ex. 4.

 Defendants do **not** *even* believe Defense Counsel's argument on their behalf.

 Defense Counsel's contention that Defendants relied on this argument in good faith is not only contradicted by clear and irrefutable evidence of Defendants' admissions and policies, but also legally ineffective as a cynical stratagem to reduce the statute of limitations from three to two years.  Defense Counsel well know that, under 29 U.S.C. § 255(a), "whether Defendants acted willfully is a question of fact that is typically inappropriate for summary judgment, much less at the motion to dismiss stage."  *See Reed v. Friendly's Ice Cream, LLC*, 15-CV-0298, 2016 U.S. Dist. LEXIS 62197, at \*19 (M.D. Pa. May 11, 2016).

 Defense Counsel's conduct in advocating a position directly contradicted by the clear and irrefutable evidence of Defendants' admissions and policies is an aggravating factor in evaluating violations of Rules 11(b)(1) and 11(b)(2) – *and a separate violation of Rule 11(b)(3).*

### 4. Defense Counsel's Frivolous Standing Argument Is Contradicted by Joint Employment Precedents

 Joint employment, like employee status, is a fact-intensive inquiry that is **not** ripe for determination on a motion to dismiss under existing law in the Third Circuit.  *See, e.g.*, *Chen v. Century Buffet & Rest.*, Civil Action No. 09-1687, 2012 U.S. Dist. LEXIS 4214, at \*8 (D.N.J. Jan. 12, 2012) ("Because of the fact-intensive nature of the inquiry, an employer determination can rarely be made on summary judgment.  Indeed, '[w]hether a person or corporation is [a] joint employer is essentially a question of fact.'") (internal citations omitted).

 This existing law in the Third Circuit is consistent with established legal principles and authoritative precedents in 11 other Circuits under the FLSA and federal statutes like

Title VII and the Americans with Disabilities Act ("ADA"), which construe employer-employee

relationships more narrowly than the FLSA.[17]

Defense Counsel well know this, and that the myriad of NCAA bylaws referenced in

the Complaint track indicia of joint employment found in *North American Soccer League v.*

*NLRB*, 613 F.2d 1379 (5th Cir. 1980), referenced in Compl. n.9.

---

[17]   *See, e.g.,* **First Circuit:** *Cannell v. Corizon, LLC*, No. 14-CR-64, 2015 U.S. Dist. LEXIS 166153, at *12-14 (D. Me. Dec. 11, 2015) (under Title VII: "The DOC does not cite any cases where a court dismissed similar claims under a joint employer theory at the motion to dismiss stage. To the contrary, most courts addressing the issue have held that the factual nature of the inquiry demands the opposite result.") **| Second Circuit:** *Grenawalt v. AT&T Mobility LLC*, 642 F. App'x 36, 37 (2d Cir. 2016) (under the FLSA: "Because determining joint employment is "fact-intensive," awards of summary judgment on this issue, although sometimes appropriate, are rare.") **| Fourth Circuit:** *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 727 (D. Md. 2013) (under Title VII: "[W]hether an entity is a plaintiff's "employer" for purposes of Title VII is a fact-bound question that is not appropriate for resolution as a pure matter of law, before discovery …. Courts performing a joint employer analysis have stated that "the precise contours of an employment relationship can only be established by a careful factual inquiry.") (internal citations omitted) **| Fifth Circuit:** *EEOC v. Teleservices Mktg. Corp.*, No. 4:04cv75, 2006 U.S. Dist. LEXIS 35478, at *10 (E.D. Tex. Feb. 8, 2006) (under Title VII: "'[Joint employment] involves a fact-intensive inquiry which precludes dismissal at the pleading stage.'") (internal citations omitted) **| Sixth Circuit:** *Brown v. Creative Rests., Inc.*, No. 11-2710-STA-cgc, 2013 U.S. Dist. LEXIS 189927, at *8 (W.D. Tenn. Feb. 19, 2013) (under the FLSA, granting summary judgment for plaintiff: "Whether a joint employment relationship exists is largely an issue of control. The issue of control is a fact-intensive analysis.") **| Seventh Circuit:** *Nicks v. Koch Meat Co.*, No. 16-cv-6446, 2017 U.S. Dist. LEXIS 150763, at *33 (N.D. Ill. Sep. 18, 2017) (under the FLSA: "Given the factual issues involved, however, the joint employer question is typically addressed at the decertification or summary judgment stage.") **| Eighth Circuit:** *Arnold v. DirecTV, LLC*, No. 4:10-CV-352 JAR, 2017 U.S. Dist. LEXIS 48467, at *14 (E.D. Mo. Mar. 31, 2017) (under the FLSA: "The joint employer analysis is 'inherently fact intensive' because it requires an assessment of the record in light of multiple factors [and] is often not suitable for resolution by summary judgment.") **| Ninth Circuit:** *Brown v. Arizona*, No. CV-09-2272-PHX-GMS, 2010 U.S. Dist. LEXIS 14056, at *2-3 (D. Ariz. Jan. 28, 2010) (under the ADA: "the question of whether a plaintiff was jointly employed by two employers is an issue of fact that is typically addressed on summary judgment after the plaintiff has had the opportunity of conducting discovery.") **| Tenth Circuit:** *Ayon v. Kent Denver Sch.*, Civil Action No. 12-cv-2546-WJM-CBS, 2013 U.S. Dist. LEXIS 158312, at *19 (D. Colo. Nov. 5, 2013) (under the FLSA: "[T]he question of whether an individual is a joint "employer" under the FLSA depends upon a fact-specific inquiry …. A determination of Defendant[] liability is thus both premature and inappropriate given the existence of disputes of material fact.") **| Eleventh Circuit:** *Aguilar v. United Floor Crew*, No. 14-CIV-61605-BLOOM/Valle, 2014 U.S. Dist. LEXIS 166468, at *10 (S.D. Fla. Nov. 26, 2014) (under the FLSA: "[G]iven the case- and fact-specific nature of the joint-employment question … determining whether the New Parties were or were not, along with Defendants, Plaintiff's joint employers, requires the weighing of evidence [which] has not been developed and is not before the Court, and that determination, in any event, is wholly inappropriate on a motion to dismiss.") **| D.C. Circuit:** *Brown v. Corr. Corp. of Am.*, 603 F. Supp. 2d 73, 79 (D.D.C. 2009) (under Title VII: "Determining whether the District and CCA were plaintiff's joint employers … 'is essentially a factual issue.' Such a factual issue is plainly inappropriate to resolve on a motion to dismiss pursuant to Rule 12(b)(6).") (internal citations omitted).

In *North American Soccer League,* the Fifth Circuit found joint employment in a sports league where, "the League exercises a significant degree of control over essential aspects of the [member] clubs' labor relations, including but not limited to the selection, retention, and termination of the players, the terms of individual player contracts, dispute resolution and player discipline," and "each [member] club granted the [League] authority over not only its own labor relations but also, on its behalf, authority over the labor relations of the other member clubs." 613 F.2d at 1382.

Compl. ¶¶ 45, 146-174 set forth, in great detail, NCAA bylaws tracking these indicia of joint control under Joint Employment of Scholarship Athletes subheadings:

- NCAA Restrictions on Unilateral Discretion in Recruiting
- NCAA Restrictions on Unilateral Discretion in Determining Eligibility for Hire or to Participate
- NCAA Restrictions on Unilateral Discretion in Supervision
- NCAA Restrictions on Unilateral Discretion in Compensation
- NCAA Restrictions on Unilateral Discretion in Duration of Employment or Participation
- NCAA Restrictions on Unilateral Discretion in Discipline; and
- Enforcement of NCAA Restrictions on Unilateral Discretion in Terms and Conditions of Scholarship Athlete Labor.

*Importantly*, in *North American Soccer League*, the court found joint employment, by operation of sports league bylaws, under the National Labor Relations Act ("NLRA"), "a labor statute that defines employment *more narrowly than the FLSA*." *See, e.g., Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 145 (4th Cir. 2017) (emphasis supplied).

Far from "clearly distinguishable" as Defense Counsel disingenuously contend, *North American Soccer League* is instructive as it strongly suggests that *similar* NCAA bylaws support a factual finding of joint employment under the *broader* FLSA standard.

## CONCLUSION

Defense Counsel well knew their motions were legally, and factually, unsupportable.

In arguing for application of "traditional 'economic reality'" multi-factor tests to evaluate employee status and joint employment, *relying on cases decided at summary judgment or after trial*,[18] Defense Counsel further show they well knew their motions were *premature* and that discovery must be applied to *some* multi-factor employment tests to determine the "economic reality" of NCAA Division I member schools' relationship to Scholarship Athletes.

For all of the foregoing reasons, Plaintiff respectfully requests that this Court sanction Defense Counsel and Defendants under Rule 11(c)(4), including, but not limited to, payment of all of the reasonable attorney's fees and other expenses directly resulting from the violations, and additional monetary sanctions in light of:

1. the willfulness of violations, particularly after notice of the deficiencies of the legal contentions had been given six (6) weeks *before* the filing of the motions to dismiss in Plaintiff Counsel's Rule 16 Pretrial Conference Letter to the Court, cc'ing Defense Counsel, dated November 17, 2017, s*ee, e.g., Doering*, 857 F.2d at 197 n.6*;*

2. the resources at Defense Counsel's disposal to have conducted "a reasonable investigation into the facts and law pertinent" to conclude that legal contentions did not comply with Rule 11(b)(2);  s*ee, e.g., In re Cendant Corp. Derivative Action Litig.*, 96 F. Supp. 2d at 406-407 (sanctions imposed for violating both Rules 11(b)(1) and 11(b)(2)); and

---

[18]  *See, e.g., In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462 (3d Cir. 2012) (summary judgment denied); *Martin v. Selker Bros., Inc.*, 949 F.2d 1286 (3d Cir. 1991) (trial); *Donovan v. Dialamerica Mktg., Inc.*, 757 F.2d 1376 (3d Cir. 1985) (summary judgment); *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149 (3d Cir. 2015) (summary judgment denied); *Jochim v. Jean Madeline Educ. Ctr. of Cosmetology, Inc.*, 98 F. Supp. 3d 750 (E.D. Pa. 2015) (summary judgment).

3.  Defense Counsel's and/or Defendants' ability to pay.  *See, e.g.*, *Doering,* 857 F.2d at 195-196 ("A particularly relevant equitable factor is the sanctioned party's ability to pay. Obviously, the deterrent effect of an award of attorney's fees depends on the extent of the sanctioned party's resources.")

Respectfully submitted,

s/   Paul L. McDonald

Paul L. McDonald
P L MCDONALD LAW LLC
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19103
Telephone:  (267) 238-3835
Facsimile:  (267) 238-3801
Email:       paul@plmcdonaldlaw.com

*Counsel for Plaintiff and the*
*Proposed Collective*

Dated:  January 29, 2018

**ORAL ARGUMENT REQUESTED**

Pursuant to Local Rule 7.1(f), Plaintiff requests oral argument on Plaintiff's Motion

for Sanctions for Failure to Comply with Rule 11(b).

Respectfully submitted,

s/  Paul L. McDonald

Paul L. McDonald
P L MCDONALD LAW LLC
1800 JFK Boulevard, Suite 300
Philadelphia, PA 19103
Telephone:  (267) 238-3835
Facsimile:  (267) 238-3801
Email:      paul@plmcdonaldlaw.com

*Counsel for Plaintiff and the*
*Proposed Collective*

Dated:  January 29, 2018

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2018, the foregoing document was served on

counsel by filing via the CM/ECF system, which will send an email notice to registered parties.

s/   Paul L. McDonald

Paul L. McDonald
P L MCDONALD LAW LLC

*Counsel for Plaintiff and the
Proposed Collective*