John E. MacDonald (Pa Bar No. 82828)
    jmacdonald@constangy.com
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
989 Lenox Drive
Suite 206 (2nd Floor)
Lawrenceville, New Jersey 08648
Telephone: (609) 454-0096
Facsimile:  (609) 844-1102

Donald S. Prophete (admitted *pro hac vice*)
    dprophete@constangy.com
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
2600 Grand Boulevard, Suite 750
Kansas City, Missouri 64108-4600
Telephone: (816) 472-6400
Facsimile:  (816) 472-6401

L. Julius Turman (admitted *pro hac vice*)
    jturman@constangy.com
Philip J. Smith (admitted *pro hac vice*)
    psmith@constangy.com
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
351 California, Suite 200
San Francisco, California 94104
Telephone: (415) 918-3002
Facsimile:  (415) 918-3003

Steven B. Katz (admitted *pro hac vice*)
    skatz@constangy.com
Sarah Kroll-Rosenbaum (admitted *pro hac vice*)
    skroll-rosenbaum@constangy.com
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP
2029 Century Park East, Suite 1100
Los Angeles, California 90067
Telephone: (310) 909-7775
Facsimile:  (424) 465-6630

*Counsel for National Collegiate Athletic Association; Duquesne University; Fairleigh Dickinson University; La Salle University; Monmouth University; The Pennsylvania State University; Rider University; Robert Morris University; Rutgers, The State University of New Jersey; Saint Francis University; Saint Joseph's University; St. Peter's University; Seton Hall University; Temple University; University of Delaware; University of Pittsburgh; and Villanova University*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAWRENCE "POPPY" LIVERS, <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, a/k/a the NCAA, et al. <br><br> Defendants. | Civil Action No. 2:17-cv-04271-MMB <br><br> **REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

## TABLE OF CONTENTS

**Page**

I.  SUMMARY OF REPLY. .................................................................................. 1

II. PLAINTIFF DOES NOT DISPUTE THAT HIS COMPLAINT IS TIME-BARRED. .................. 1

III. THERE IS NO "PRISONER EXCEPTION" TO THE FLSA. ................................................ 6

IV. EVEN IF IT WERE APPROPRIATE TO APPLY PLAINTIFF'S FAVORED
    MULTI-FACTOR TEST, HIS COMPLAINT WOULD STILL FAIL TO ALLEGE
    PLAUSIBLY THAT STUDENT-ATHLETES ARE *IPSO FACTO* EMPLOYEES. ...................... 9

V.  PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO AMEND. ............................................. 13

VI. CONCLUSION. ........................................................................................ 14

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page**

*Attanasio v. Community Health Sys.*,
   863 F. Supp. 2d 417 (M.D. Pa. 2012) ................................................................. 10

*Baugh v. CVS Rx Services, Inc.*,
   No. CV 15-00014-MAK, 2015 WL 12552067 (E.D. Pa., July 24, 2015)............................ 2, 6

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ................................. 3

*Benjamin v. B & H Education, Inc.*,
   877 F.3d 1139 (9th Cir. 2017)........................................................................ 7

*Berger v. Nat'l Collegiate Athletic Ass'n*,
   843 F.3d 285 (7th Cir. 2016).................................................................. *passim*

*Brock v. Richland Shoe Co.*,
   799 F.2d 80 (3d Cir. 1986)....................................................................... 2, 5

*Burlington Coat Factory Sec. Litig.*,
   114 F.3d 1410 (3d Cir. 1997)........................................................................ 14

*Callahan v. City of Sanger*,
   No. 14-CV-600-BAM, 2015 WL 2455419 (E.D. Cal., May 22, 2015) ...................... 5

*Dawson v. Nat'l Collegiate Athletic Ass'n*,
   250 F. Supp.3d 401 (N.D. Cal. 2017) ............................................................ 1, 6

*DelRio-Mocci v. Connolly Prop. Inc.*,
   672 F.3d 241 (3d Cir. 2012).......................................................................... 3

*Dixon v. Local Express, Inc.*,
   No. 4:16-CV-2081, 2017 WL 2778245 (S.D. Tex., June 26, 2017) ...................... 9

*Glatt v. Fox Searchlight Pictures, Inc.*,
   791 F.3d 376 (2d Cir. 2015), *amended and superseded by*
   811 F.3d 528 (2d Cir. 2016)................................................................. *passim*

*Goldberg v. Whitaker House Cooperative, Inc.*,
   366 U.S. 28, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961) ........................................... 7, 8

*Hale v. Arizona*,
   993 F.2d 1387 (9th Cir. 1993)........................................................................ 7

*Hanscom v. Carteret Mortgage Corp.*,
   No. CIV.A. 1:06-CV-2483, 2008 WL 4845832 (M.D. Pa., Nov. 5, 2008)............................ 5

*Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*,
   482 F.3d 247 (3d Cir. 2007)................................................................... 13, 14

*Katz v. DNC Services Corp., Civil Action*,
   No. 16-5800, 2018 WL 692164 (E.D. Pa. Feb. 2, 2018) ...................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*Lucia Vlad-Berindan v. NYC Metropolitan Transportation Authority*,
   No. 14CV10304VECFM, 2016 WL 1317700 (S.D.N.Y., Apr. 1, 2016)................................. 11

*Lugo v. Farmer's Pride Inc.*,
   802 F. Supp. 2d 598 (E.D. Pa. 2011) ............................................................. 2, 6, 8

*Mackereth v. Kooma, Inc.*,
   No. CIV.A. 14-04824, 2015 WL 2337273, *12 (E.D. Pa., May 14, 2015) ............................. 13

*Matrai v. AM Entertainment, LLC*,
   No. 14-2022-SAC, 2015 WL 1646214 (D. Kan., Apr. 14, 2015).............................................. 9

*McLaughlin v. Bos. Harbor Cruise Lines, Inc.*,
   419 F.3d 47 (1st Cir. 2005) ...............................................................................................9

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988) ...................................................... 2

*Miller v. Stewart*,
   No. 15-14164, 2016 WL 8458985 (E.D. Mich., Dec. 13, 2016)............................................ 9

*Mitchell v. Lancaster Milk Co.*,
   185 F.Supp. 66 (M.D.  Pa. 1960) ............................................................................................9

*Parada v. Banco Industrial De Venezuela, C.A.*,
   753 F.3d 62 (2d Cir. 2014)................................................................................................... 2

*Peña v. Handy Wash, Inc.*,
   28 F. Supp. 3d 1289 (S.D. Fla. 2014)...................................................................................9

*Person v. Teamsters Local Union 863*,
   No. CIV. 12-2293 FSH JBC, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013)........................ *3*

*Reich v. Gateway Press, Inc.*,
   13 F.3d 685 (3d Cir. 1994)...................................................................................... 3, 4, 5

*Reich v. Japan Enterprises Corp.*,
   91 F.3d 154 (9th Cir. 1996) ................................................................................................ 3

*Richardson v. Bezar, Civil Action*,
   No. 15-0772, 2015 WL 5783685 (E.D. Pa. Oct. 5, 2015)..................................................... 10

*Schumann v. Collier Anesthesia, P.A.*,
   803 F.3d 1199 (11th Cir. 2015)......................................................................................... 11

*Shane v. Fauver*,
   213 F.3d 113 (3d Cir. 2000).............................................................................................. 14

*Sherman v. Am. Moving Eagle Express, Inc.*,
   No. 09-575, 2012 WL 748400 (E.D. Pa. Mar. 8, 2012)......................................................... 9

*Sigala v. ABR of VA, Inc.*,
   No. GJH-15-1779, 2016 WL 1643759 (D. Md., Apr. 21, 2016) ............................................ 9

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>** **<u>Page</u>**

*Smolnik v. Van Dyke*,
  No. 8:04CV401, 2006 WL 1401716 (D. Neb., May 19, 2006) ................................................ 9

*Solis v. General Interior Systems, Inc.*,
  No. 5:08-CV-0823 NPM/ATB, 2012 WL 1987139 (N.D.N.Y., June 1, 2012) ........................ 9

*Spellman v. Am. Eagle Express, Inc.*,
  680 F. Supp. 2d 188 (D.D.C. 2010) ........................................................................................ 9

*Stokes v. BWXT Pantex, L.L.C.*,
  424 Fed.Appx. 324 (5th Cir. 2011) ........................................................................................ 2

*Tennessee Coal, Iron & R. Co. v. Muscoda Local*,
  321 U.S. 590, 598, 64 S. Ct. 698, 88 L. Ed. 949 (1944) ........................................................ 8

*Thornton v. Mainline Communs., LLC*,
  157 F. Supp. 3d 844 (E.D. Mo. 2016) .................................................................................... 9

*Tony and Susan Alamo Found. v. Sec'y of Labor*,
  471 U.S. 290, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985) ...................................................... 8

*Vanskike v. Peters*,
  974 F.2d 806 (7th Cir. 1992) ............................................................................................ 6, 8

*Walling v. Portland Terminal Co.*,
  330 U.S. 148, 67 S. Ct. 639, 91 L. Ed. 809 (1947) .......................................................... 8, 11

*Williams v. Strickland*,
  87 F.3d 1064 (9th Cir. 1996) ................................................................................................ 7

*Zizic v. Q2Administrators, LLC*,
  728 F.3d 228 (3d Cir. 2013) ................................................................................................ 13

**Statutory Authorities**

29 U.S.C. § 213(a)(1) .............................................................................................................. 4

29 U.S.C. § 213(a)(8) ........................................................................................................... 3, 4

29 U.S.C. § 255(a) ............................................................................................................... 2, 6

**Rules and Regulations**

Fed. R. Civ. Proc. 12(b)(6) .................................................................................................. 14

## I.
### SUMMARY OF REPLY.

Plaintiff's Opposition boils down to two flawed arguments:  First, *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285 (7th Cir. 2016), and *Dawson v. Nat'l Collegiate Athletic Ass'n*, 250 F. Supp.3d 401 (N.D. Cal. 2017), are "radical departures from well-settled law" because they "they relied on a legal rationale that . . . is only applicable to detainees and prisoners performing involuntary servitude as punishment for crime . . . ."  Second, once reliance on the so-called "prisoner" cases is set aside, the question of whether the Complaint plausibly alleges an employment relationship turns on the application of "a multi-factor employee test" on facts elicited after "application of discovery."  (*Opp*., at p. 28 [Dkt. 28].)

Both arguments are wrong.  There is no "prisoner exception" to the FLSA, and both *Berger* and *Dawson* follow fundamental and well established FLSA principles in holding at the pleading stage that student athletes are not *ipso facto* employees of their schools.

This Court need not, however, reach the underlying question of employment status.  It can resolve this Motion on much simpler grounds:  the Complaint is indisputably time-barred.


## II.
### PLAINTIFF DOES NOT DISPUTE THAT HIS COMPLAINT IS TIME-BARRED.

In their original papers, moving defendants argued that Plaintiff's claims are time barred because he failed to file his complaint within the two-year limitations period applicable to his claim, and that he cannot take advantage of the FLSA's extension of the limitations period to three years for "willful" violations because defendants acted in conformity with unequivocal language in the Department of Labor's *Field Operations Handbook* ("FOH") that "[a]ctivities of students in such programs" as "***interscholastic athletics***" is "not work of the kind contemplated by" the FLSA "and do[es] not result in an employer-employee relationship between the student and the school" (FOH § 10b03(e) [emphasis added]) (*See Mot.*, pp. 14-15 [Dkt. 24-1].)  Thus regardless of the merits of the underlying legal issue addressed in this motion (*viz.*, whether participating in intercollegiate athletics is compensable work under the FLSA), Plaintiff's complaint must be dismissed as time-barred.  Plaintiff does not dispute this.

Plaintiff admits that the last season of football he played for Villanova was the 2014-15 season.  (*Complaint*, ¶¶ 20, 176 [Dkt. 1].)  He has not objected to moving defendants' request that this Court take judicial notice of the fact that Villanova's 2014-15 season ended when it played its last game on December 13, 2014.  *See http://www.villanova.com/sports/m-footbl/sched/nova-m-footbl-sched.html.*)  The Complaint was filed on September 26, 2017—**two years, nine months** after Plaintiff played his last game for Villanova.

Plaintiff does not dispute that the statute of limitations for FLSA claims is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued."  29 U.S.C. § 255(a).  Nor does he dispute that the Third Circuit applies a "more rigorous standard" for finding conduct to be "willful" under § 255(a):  it requires knowledge that the employer violated the FLSA, or reckless disregard of the fact of a violation.  *Brock v. Richland Shoe Co.*, 799 F.2d 80, 81 (3d Cir. 1986) (rejecting negligence-based standard of willfulness)*, aff'd sub nom. McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S. Ct. 1677, 100 L. Ed. 2d 115 (1988).  Mere negligence—even if based on an unreasonable interpretation of the FLSA—is not enough.  *See McLaughlin*, 486 U.S. at 124 n.13 ("If an employer acts unreasonably, but not recklessly, in determining its legal obligation . . . it should not be . . . considered [willful] under *Thurston* or the identical standard we approve today.").  *Accord, Lugo v. Farmer's Pride Inc.*, 802 F. Supp. 2d 598, 617 (E.D. Pa. 2011).

Accordingly, Plaintiff's complaint is time-barred as he failed to plead facts showing that the moving defendants ***willfully*** violated the FLSA when they failed to pay scholarship athletes—that is, they either ***knew*** that scholarship athletes were "employees," or they ***recklessly disregarded*** authorities stating that student athletes were "employees."   Plaintiff bears the burden of proving willfulness for limitations purposes under the FLSA.  *E.g., Parada v. Banco Industrial De Venezuela, C.A.*, 753 F.3d 62, 71 (2d Cir. 2014); *Stokes v. BWXT Pantex, L.L.C.*, 424 Fed.Appx. 324, 326 (5th Cir. 2011); *Baugh v. CVS Rx Services, Inc.*, No. CV 15-00014-MAK, 2015 WL 12552067, *1 (E.D. Pa., July 24, 2015).  Accordingly, he bears the burden of pleading a plausible basis for finding willfulness.

Plaintiff's sole allegation addressing the statute of limitations is the legal conclusion that "[b]ecause defendants' violations of wage and hour provisions have been willful, the appropriate statute of limitations is three years pursuant to 29 U.S.C. § 255(a)."  (*Complaint*, ¶

9 [Dkt. 1].)  He does not bother to assert or allege any facts showing willfulness.  When challenged under Rule 12, of course, such a "formulaic recitation of the elements . . . will not do."  *DelRio-Mocci v. Connolly Prop. Inc*., 672 F.3d 241, 245 (3d Cir. 2012) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 [2007].  Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  (*See also Mot.*, p. 2 n.3 [Dkt. 24-1] [discussing standard for Rule 12 motions].)  Plaintiff does not argue that he can plead additional facts if given an opportunity to amend.  Therefore, as is well-settled, he has waived any argument that he is entitled to one.  *See, e.g., Person v. Teamsters Local Union 863*, No. CIV. 12-2293 FSH JBC, 2013 WL 5676802, at *2 (D.N.J. Oct. 17, 2013) ("Failure to raise legal arguments in opposition to a motion to dismiss results in waiver.").

As noted in moving defendants' original papers, ***there are no authorities of any kind*** stating that student athletes are "employees" under the FLSA.  (*Mot*. at p. 8 & n.5 [Dkt. 24-1].)  Accordingly, there is nothing to which defendants could have acted with reckless disregard, and no basis for a finding of willfulness.

Moreover, the decades-old existence of language in the FOH stating that intercollegiate athletes are not employees under the FLSA by itself demonstrates that if the moving defendants are wrong in replying on such language that student athletes are not covered by the FLSA, they would at most be negligent (if that), and cannot, as a matter of law, have willfully violated the FLSA.  And if there is no willful violation, the Complaint is indisputably time-barred.

The Third Circuit's decision in *Reich v. Gateway Press, Inc*., 13 F.3d 685 (3d Cir. 1994), provides a useful comparison.  There, the Circuit held that "violations [are] not willful where there are 'close questions of law and fact'" based on opinion letters issued by the DOL. *Id*. at 702–03.  See *also Reich v. Japan Enterprises Corp*. 91 F.3d 154, 91 F.3d 154 (9th Cir. 1996) (table) (applying *Gateway Press*).  If there was no willfulness as a matter of law in that case, there could not possibly be a finding of willfulness here, on any set of facts.

In *Gateway Press*, the employer owned and operated 19 weekly newspapers serving the Pittsburgh suburbs.  *Gateway Press*, 13 F.3d at 688-89.  The DOL filed suit in the Western District of Pennsylvania on behalf of salaried reporters for unpaid overtime.  The employer relied on two overtime exemptions under the FLSA:  the small newspapers exemption, 29

U.S.C. § 213(a)(8), which applies to newspapers with circulations of less than 4,000, and the professional exemption, 29 U.S.C. § 213(a)(1).  With regard to the former, the employer relied on two opinion letters issued by the DOL's Wage and Hour Division in 1946 and 1965 which could be read to suggest that the circulation test for the small newspapers exemption applied separately to each publication, despite common ownership and control.  The 1946 letter indicated that a publisher of more than one newspaper "may treat each paper separately for the purposes of determining whether the circulation is less than the maximum" under some circumstances, and the 1965 letter stated that "when a company publishes more than one newspaper, each newspaper is tested separately in order to determine whether the circulation is less than four thousand, provided that, in addition to their separate mastheads, the several newspapers carry different local news items."  *Gateway Press*, 13 F.3d at 692 (quoting opinion letters).  The district court, convinced by the opinion letters, rejected the DOL's argument that the circulation test should be applied on an enterprise-wide basis, and held that the exemption was satisfied for 13 of the 19 publications.  The court also found that the reporters for the other six papers did not meet the professional exemption, and awarded back pay.  Finally, it held that the violation was not willful.

The Third Circuit reversed the district court's finding that the small newspapers exemption applied.  It held that the circulation test for the exemptions should be applied on an enterprise-wide basis, under which the employer did not qualify for the exemption.  *Id*. at 691-97.  It reasoned that neither of the opinion letters "gives us a reliable answer to [the] question."  *Id*. at 691.  The 1946 opinion letter "qualifie[d its] statement" in support of the employer's position, and thus "poses, without answering, the question presented here."  *Id*. "The 1965 opinion letter is not helpful either," the Circuit wrote, leaving ambiguous a series of critical questions "apparently because the Administrator deliberately wanted to leave the standard unclear . . . ."  *Id*. at 692.  Finally, it pointed out that 1965 letter was inconsistent with another one issued by the Wage and Hour Division just four years later, illustrating "the inconsistency and vagueness of the agency interpretations of this exemption."  *Id*.  Ultimately, the Circuit concluded that "inconsistency and vagueness" justified denying *Chevron*/*Skidmore* deference to any of the opinion letters.  *Id*. at 692-93.

Notwithstanding the facial ambiguity and inconsistency accompanying the opinion letters on which the employer relied—and, ultimately, the fact that the employer's reliance

was erroneous—the Circuit nevertheless *affirmed* the district court's finding that the employer did not willfully violate the FLSA. *Id*. at 702-03. Observing that the evidence of willfulness was, at best, in equipoise, the Circuit held that "[m]ore importantly, the district court correctly observed that this case presents not only close questions of law and fact, but also a case of first impression with respect to one of the governing exemptions notwithstanding that it has been on the books for 55 years." *Id*; *see also Callahan v. City of Sanger*, No. 14-CV-600-BAM, 2015 WL 2455419, at *13 (E.D. Cal., May 22, 2015) (where Ninth Circuit had not addressed question and the relevant "statutory and regulatory language . . . is ambiguous," violation cannot be willful) (*quoting and citing Gateway Press*, 13 F.3d at 703); *Hanscom v. Carteret Mortgage Corp*., No. CIV.A. 1:06-CV-2483, 2008 WL 4845832, at *5 (M.D. Pa., Nov. 5, 2008) (granting partial summary judgment on statute of limitations where Wage and Hour Division opinion letter supported employer's position. "Accordingly, the Court finds that its conduct, if violative of the FLSA, does not amount to a willful violation.").

Here, there is no ambiguity contradicting the employer's position. Whereas the opinion letters in *Gateway* were ambiguous on their face, and other opinion letters contradicted them, the FOH speaks without ambiguity, there are no contradictory regulations, interpretations or opinion letters from the DOL. To be sure, Plaintiff does argue that the phrase "interscholastic athletics" in the FOH should be narrowly construed to refer only to student-run 'club' sports, because moving defendants' interpretation of the phrase cannot be squared with the "prevailing conditions of big business that is NCAA-regulated sports *today*." (*Opp*. at p. 21 [Dkt. 28] (emphasis in original].) But despite Plaintiff's argument, the FOH's plain language is broad. It refers to all "interscholastic athletics," not just student-run club sports. Even Plaintiff concedes that "NCAA-regulated sports are, *generically*, 'interscholastic athletics.'" (*Id*. at p. 20 [emphasis in original].) Whatever weight Plaintiff merits for his argument, 'hasn't kept up with the times' falls far short of showing—as Plaintiff must—that moving defendants "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Brock,* 799 F.2d at 81.

The legal impossibility of any finding of willfulness is further underscored by the fact that no court has ever held that students who play interscholastic sports are *ipso facto* employees of their schools, under state or federal law. (*See Mot.*, at pp. 8-9 n.5 [Dkt. 24-1]

[collecting cases].)  Plaintiff does not cite a single counter-example in his Opposition.  It is also underscored by the fact that twice in as many years federal courts have rejected Plaintiff's theory of the case, each time construing the FOH in the same manner as the moving defendants, and citing it to support their holdings.  *See Berger*, 843 F.3d at 292-93 ("Because NCAA-regulated sports are 'extracurricular,' 'interscholastic athletic' activities, we do not believe that the Department of Labor intended the FLSA to apply to student athletes. We find the FOH's interpretation of the student-athlete experience to be persuasive."); *Dawson*, 250 F. Supp.3d at 406-07 ("Moreover, the Department of Labor has indicated that student athletes are not employees under the FLSA.").  If moving defendants misconstrue the FLSA, so do at least five federal judges, so defendants cannot possibly have ***willfully*** done so, as a matter of law.

Although willfulness under 29 U.S.C. § 255(a) is ordinarily a mixed question of law and fact, *Lugo*, 802 F. Supp. 2d at 617, where the facts are undisputed, it is a question of law.  In *Baugh v. CVS Rx Services, Inc.*, No. CV 15-00014-MAK, 2015 WL 12552067 (E.D. Pa., July 24, 2015), for example, Judge Kearny held that "[w]illfullness is a question of law," *id.* at *1, where there existed an opinion from a district outside of the Third Circuit holding that the same employer's pay practices were lawful.  Concluding that the out-of-circuit ruling "belies any claim [employer] willfully disregarded its obligations under the FLSA," he granted summary judgment on limitations grounds without reaching the question of whether he agreed with the out-of-circuit ruling. *Id.*  Similarly, here the FOH's language concerning "interscholastic athletics" belies any claim of willfulness, and Plaintiff pleads no facts—nor proffers any amendment to the Complaint—which could demonstrate willfulness.

Having failed to sustain his burden properly to plead facts plausibly alleging willfulness in the face of the FOH, Plaintiff is left with a two-year statute of limitations, which he indisputably failed to meet.  The Complaint is therefore time-barred and should be dismissed.

## III.
### THERE IS NO "PRISONER EXCEPTION" TO THE FLSA.

Plaintiff's argument that *Vanskike v. Peters*, 974 F.2d 806, 809 (7th Cir. 1992), *cert. denied*, 507 U.S. 928, 113 S. Ct. 1303, 122 L. Ed. 2d 692 (1993), and other cases concerning

whether prison labor is "work" under the FLSA are based on the special status of prisoners and not on generally-applicable FLSA principles is simply incorrect.

In the litany of cases Plaintiff cites, he ignores the central point: a traditional multifactor employment test need not apply when the broader and more fundamental economic realities of the relationship are apparent.

Conspicuously, Plaintiff fails to mention the Ninth Circuit's recent decision in *Benjamin v. B & H Education, Inc.*, 877 F.3d 1139 (9th Cir. 2017), which was handed down before he filed his Opposition.  At issue in *Benjamin* were cosmetology students.  The Ninth Circuit recognized that while it had not previously addressed vocational students or interns, "[w]e have considered situations involving ***prison inmates and homeless persons in rehabilitation programs***." *Benjamin*, 877 F.3d at 1145 (emphasis added) (*citing Hale v. Arizona*, 993 F.2d 1387, 1389 [9th Cir. 1993] and *Williams v. Strickland*, 87 F.3d 1064, 1065 [9th Cir. 1996]).  Recognizing both contexts ***together***, the Circuit stated that, "[w]e held that neither the prison inmates nor the rehabilitation participants were employees. ***This is because there was no bargained-for compensation relationship in either case***. The prisoners worked because they had to work. And the rehabilitation participants had no expectation of compensation other than treatment." *Benjamin*, 877 F.3d at 1145 (internal citations omitted.)  After assessing the primary beneficiary test applied by the Second Circuit in *Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376 (2d Cir. 2015), *amended and superseded by* 811 F.3d 528 (2d Cir. 2016), which the court found most appropriately applied to the context of student employment, and the alternative Department of Labor test to assess employment of the interns, the court concluded that under both tests cosmetology students were not employees.[1] *Id.* at 1148.  Among other reasons, the court concluded that the "[s]tudents did not displace regular employees," were "not entitled to a job at the end of their clinical experience," and "understood they would not receive compensation." *Id.*

*Benjamin*'s emphasis on the threshold question of whether "there was no bargained-for compensation relationship" is no accident.  The "test of employment" under the FLSA is one of "'economic reality' rather than 'technical concepts.'"  *Goldberg v. Whitaker House*

---

[1] Which, if any at all, of the various intern tests apply to student athletes was discussed in *Berger*, where the Seventh Circuit concluded that the District Court "concluded correctly that our approach "to determining who is an employee under the FLSA is . . . a flexible one." *Berger*, 843 F.3d at 291 (internal citation omitted.)

*Cooperative, Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961). *Accord Tony and Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 301, 105 S. Ct. 1953, 85 L. Ed. 2d 278 (1985). The Supreme Court has "defined 'work' as 'physical or mental exertion (whether burdensome or not) controlled or required by the employer and ***pursued necessarily and primarily for the benefit of the employer and his business***.'" *Lugo v. Farmer's Pride Inc.*, 802 F. Supp. 2d 598, 602 (E.D. Pa. 2011) (emphasis added) (*quoting Tennessee Coal, Iron & R. Co. v. Muscoda Local*, 321 U.S. 590, 598, 64 S. Ct. 698, 88 L. Ed. 949 [1944]). This definition "remains operative" today. *Lugo,* 802 F. Supp. 2d at 602. The Supreme Court has also held that the FLSA "cannot be interpreted so as to make a person whose work serves only his own interest an employee of another person who gives him aid and instruction." *Walling v. Portland Terminal Co.,* 330 U.S. 148, 152-53, 67 S. Ct. 639, 91 L. Ed. 809 (1947).

*Berger* followed *Vanskike* and other cases that dispense with application of a multi-factor test because application of a multi-factor test derived from independent contractor disputes (where there is a clear mutual expectation that compensation will be paid) to student-athletes fails to capture the "economic reality" of a relationship in which neither party has any expectation that compensation will be paid. *Berger*, 843 F.3d at 293 ("Although we do not doubt that student athletes spend a tremendous amount of time playing for their respective schools, they do so—and have done so for over a hundred years under the NCAA—***without any real expectation of earning an income***. Simply put, student-athletic 'play' is not 'work,' at least as the term is used in the FLSA.") (emphasis added). While it is undeniable that student-athletes exert themselves mentally and physically, they do so for their own reasons, and their own benefit. And their schools—which are in the business of education, research, and community service—offer athletics as a part of their *educational* mission, not as an end in itself. *See Berger*, 843 F.3d at 293 ("Student participation in collegiate athletics is entirely voluntary. Moreover, the long tradition of amateurism in college sports, by definition, shows that student athletes—like all amateur athletes—participate in their sports for reasons wholly unrelated to immediate compensation.")

In short, rather than representing an insular exception to the FLSA, *Berger* draws upon the central tenets of FLSA jurisprudence to conclude that student-athletes are not, as a matter of law, *ipso facto* employees of the schools they represent on the playing field.

## IV.

### EVEN IF IT WERE APPROPRIATE TO APPLY PLAINTIFF'S FAVORED MULTI-FACTOR TEST, HIS COMPLAINT WOULD STILL FAIL TO ALLEGE PLAUSIBLY THAT STUDENT-ATHLETES ARE *IPSO FACTO* EMPLOYEES.

Plaintiff is mistaken in suggesting that dismissal of an FLSA claim is never appropriate at the pleading stage because of the need to apply a multi-factor test to the question of employment status. Indeed, the cases he cites are all distinguishable, as they are all cases in which there is no dispute over the mutual expectation of compensation, but there is a dispute over application of the FLSA (as opposed to general contract law) to the expected compensation.[2] The case of student-athletes is—as held by *Berger* and *Dawson*—one of those where disposition of FLSA claim on a motion to dismiss is appropriate because there is no need to apply a multi-factor test.

---

[2] Nine of the cases cited by Plaintiff are disputes over whether independent contractors are really employees. *Dixon v. Local Express, Inc*., No. 4:16-CV-2081, 2017 WL 2778245 (S.D. Tex., June 26, 2017) (drivers); *Sigala v. ABR of VA*, Inc., No. GJH-15-1779, 2016 WL 1643759 (D. Md., Apr. 21, 2016) (janitors); *Thornton v. Mainline Communs., LLC*, 157 F. Supp. 3d 844, 849 (E.D. Mo. 2016) (cable TV installers); *Matrai v. AM Entertainment, LLC*, No. 14-2022-SAC, 2015 WL 1646214 (D. Kan., Apr. 14, 2015) (cable TV installers); *Peña v. Handy Wash, Inc*., 28 F. Supp. 3d 1289 (S.D. Fla. 2014) (drivers); *Solis v. General Interior Systems, Inc*., No. 5:08-CV-0823 NPM/ATB, 2012 WL 1987139 (N.D.N.Y., June 1, 2012) (construction workers); *Sherman v. Am. Moving Eagle Express, Inc.*, No. 09-575, 2012 WL 748400 (E.D. Pa. Mar. 8, 2012) (drivers); *Spellman v. Am. Eagle Express, Inc.,* 680 F. Supp. 2d 188, 192 (D.D.C. 2010) (drivers); *Smolnik v. Van Dyke*, No. 8:04CV401, 2006 WL 1401716 (D. Neb., May 19, 2006) (motel managers).

In two of the cases, there is no dispute about the employment relationship at all—the issue is whether an FLSA exemption applies. *McLaughlin v. Bos. Harbor Cruise Lines, Inc*., 419 F.3d 47 (1st Cir. 2005) (whether seaman exemption applied to deckhand on commuter ferry); *Mitchell v. Lancaster Milk Co*., 185 F.Supp. 66 (M.D. Pa. 1960) (whether diary processing exemption applied to particular workers at a processing facility).

Finally, Plaintiff cites *Miller v. Stewart*, No. 15-14164, 2016 WL 8458985 (E.D. Mich., Dec. 13, 2016), *report and recommendation adopted*, 2017 WL 914133 (E.D. Mich., Mar. 8, 2017), concerning the suitability of applying the economic realities test on a motion to dismiss. However, the cited statement is *dicta*. The motion to dismiss in that case was denied because defendant's argument that plaintiff was not an employee turned on facts outside of the complaint and not subject to judicial notice. *See id*., 2016 WL 8458985, *3 ("[T]he Court need not decide whether plaintiff was an employee because defendants rely on matters outside the pleadings for its argument that plaintiff was not an employee.") Besides, *Miller* did not say in *dicta* that the economic realities test could ***never*** be applied on a motion to dismiss, only that it "is unlikely" to be applied. *Id*.

But even when a multi-factor test applies, under appropriate circumstances courts in the Third Circuit dismiss FLSA under Rule 12 because an employment relationship cannot adequately be alleged. *See, e.g., Katz v. DNC Services Corp*., Civil Action No. 16-5800, 2018 WL 692164 (E.D. Pa. Feb. 2, 2018) (dismissed on the ground that the complaint did not adequately allege joint employment relationship); *Richardson v. Bezar*, Civil Action No. 15-0772, 2015 WL 5783685 (E.D. Pa. Oct. 5, 2015) (same); *Attanasio v. Community Health Sys*., 863 F. Supp. 2d 417, 422-26 (M.D. Pa. 2012) (same).  This is another such circumstance.  Even if the Court were to apply the multi-factor test urged by Plaintiff, the allegations contained in the complaint do not allege plausibly an employment relationship.

Plaintiff argues that the *Glatt* test "is best suited to evaluate employee status" of student-athletes.  (*Opp*., at p. 26 [Dkt. 28].)  In *Glatt*, the Second Circuit held that "the proper question is whether the intern or the employer is the primary beneficiary of the relationship" (*Glatt*, 811 F.3d at 536) and set forth the following "set of non–exhaustive factors" to be used to answer that question:

> "1. The extent to which the intern and the employer clearly understand that there is no expectation of compensation. Any promise of compensation, express or implied, suggests that the intern is an employee—and vice versa.
> "2. The extent to which the internship provides training that would be similar to that which would be given in an educational environment, including the clinical and other hands–on training provided by educational institutions.
> "3. The extent to which the internship is tied to the intern's formal education program by integrated coursework or the receipt of academic credit.
> "4. The extent to which the internship accommodates the intern's academic commitments by corresponding to the academic calendar.
> "5. The extent to which the internship's duration is limited to the period in which the internship provides the intern with beneficial learning.
> "6. The extent to which the intern's work complements, rather than displaces, the work of paid employees while providing significant educational benefits to the intern.
> "7. The extent to which the intern and the employer understand that the internship is conducted without entitlement to a paid job at the conclusion of the internship." *Id*. at 536-37.

"No one factor is dispositive and every factor need not point in the same direction for the court to conclude that the intern is not an employee entitled to the minimum wage." *Id*. at 537.

*Glatt* expressly limited this test to "the context of unpaid internships," and specifically internships with "for-profit employers." *Id*. at 536 & n.2. It "is confined to internships and does not apply to training programs in other contexts." *Id*. at 537. As "[t]he purpose of a bona-fide internship is to integrate classroom learning with practical skill development in a real-world setting," *id*., it focuses broadly on two inquiries to determine the "economic reality" of the relationship: first, whether the intern is acting on the promise of present or future employment (factors 1, 6 and 7), and second, whether the intern is receiving training germane to his or her program of formal education (factors 2, 3, 4 and 5). *See, e.g.*, *Lucia Vlad-Berindan v. NYC Metropolitan Transportation Authority*, No. 14CV10304VECFM, 2016 WL 1317700, at *7 (S.D.N.Y., Apr. 1, 2016) ("As to interns working in the private sector, the court in *Glatt* embraced a primary beneficiary test that focuses on three considerations: (1) 'what the intern receives in exchange for his work,' (2) 'the economic reality ... between the intern and the employer,' and (3) whether 'the intern enters into the [intern-employer] relationship with the expectation of receiving educational or vocational benefits that are not necessarily expected with all forms of employment.'") Because the second inquiry "reflects a central feature of the modern internship—the relationship between the internship and intern's formal education—[it is] confined to internships and does not apply to training programs in other contexts." *Id*.

It is the first inquiry (factors 1, 6 and 7) that is most important when deciding whether there exists an employment relationship outside of the student-intern context, and most accords with the "primary benefit" test of *Walling*, as discussed in greater detail in Section III of this Reply. *See Schumann v. Collier Anesthesia, P.A.*, 803 F.3d 1199, 1212 (11th Cir. 2015) ("[F]actors 1 and 7 are essentially the same as *Portland Terminal*'s considerations that the intern and employer both understand that the intern will not receive wages and that the intern is not entitled to a job upon completion of the internship, respectively.")

Plaintiff's description of the *Glatt* test is misleading at best, and he doesn't bother to actually apply it to his pleading. His summary of the test is partial and self-serving. He describes factors 2, 3, 4, and then invents an additional factor that is not part of the *Glatt* test at all: whether the activities in question "are complementary, or essential, to related business operations." (*Opp*. at p. 2 n.3 [Dkt. 28].) Notably, Plaintiff completely ignores 1, 6 and 7, which

aim at the most important question—whether the intern is receiving training for his or her work, or a promise of present or future employment.  *See Glatt*, 811 F.3d at 536 (test "focuses on what the intern receives in exchange for [his or her] work").

Plaintiff's selective invocation of the *Glatt* test is significant because he tries to run away from those *Glatt* factors which cut against his claim that student-athletes are employees.  He does not allege that student-athletes join college teams with the expectation that schools will pay them, that schools maintain professional athletic teams, or that student-athletes have any expectation of being hired for professional teams maintained or conducted by the schools after they graduate.  To the contrary, the Complaint is filled with allegations about NCAA regulations that ***bar*** paying student-athletes to play college sports, all of which directly contradict any claim that student-athletes have an expectation of compensation.  (*See, e.g., Complaint* at ¶ 10 [Dkt. 1] [". . . defendants' unlawful conduct is compelled by NCAA bylaws set forth in the <u>NCAA Division I Manual</u> . . . ."]; ¶ 28 ["NCAA bylaws . . . are uniformly interpreted and applied by member schools to insure a 'level playing field' . . . ."]; ¶ 29 ["By operation and enforcement of NCAA bylaws, all members of the Scholarship Athlete Collective are subjected to the same policies and practices prohibiting their proper classification as employees and compensation on a minimum wage scale . . . ."]; ¶ 64 ["Scholarship athletes are neither paid for participation in NCAA athletics nor paid for performing . . . operational activities in athletic departments . . . ."]; ¶ 69 ["If a Scholarship Athlete attempts to earn fungible pay . . . by 'trading' on his/her athletic reputation, he/she runs afoul of NCAA bylaws prohibiting compensation and faces suspension or termination of eligibility."; ¶¶ 70-74 [scholarships are limited by NCAA regulation and can be revoked "for almost any reason."].)

The half of the *Glatt* test that Plaintiff does acknowledge—factors 2, 3, and 4—do not tilt strongly in his favor.  Factor 2 tilts strongly against his claim.  Intercollegiate athletics have been part of the college experience for over a century.  The educational benefits of sports has long been a part of the "educational environment."  Factors 3 and 4 are neutral.  Regarding 3, participating in interscholastic athletics is not "tied to the intern's formal education program," but athletics has a long history of supplementing classroom education by teaching diligence and self-discipline.  (*See Complaint* at ¶ 51 [Dkt. 1] ["[A]thletic . . . scholarships require recipients to meet and maintain academic eligibility standards."]; ¶ 56 [describing NCAA regulations designed "to minimize interference with academic studies"]; ¶ 68 [referencing "NCAA progress-

toward-degree requirements"].)  Regarding 4, the arguably-imperfect correspondence between some athletic seasons and the academic calendar means attention should be made to support student-athletes in the classroom.  (*But see Complaint* at ¶ 3 [Dkt. 1] ["In . . . NCAA athletics . . . student performance outside the classroom is . . . supposed to be restricted to 20 hours per week . . . to limit interference with academic studies . . . ."]; ¶¶ 162-64 [describing NCAA regulations limiting the amount of time student-athletes can be required to devote to athletics].)

The Second Circuit squarely held that "every factor need not point in the same direction . . . ."  *Glatt*, 811 F.3d at 537.  Here, even on Plaintiff's allegations, 4 of 7 factors tilt decisively in finding there is no employment relationship, and the rest are at best (for Plaintiff) neutral. Although this Court is not required to apply *Glatt*, if it did, it would find that the Complaint fails plausibly to allege an employment relationship.

# V.
## PLAINTIFF SHOULD NOT BE GIVEN LEAVE TO AMEND.

In *Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc*., 482 F.3d 247 (3d Cir. 2007), the Third Circuit held that, while "in civil rights cases district courts must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile" (*id*. at 251), "*[i]n non-civil rights cases, the settled rule is that properly requesting leave to amend a complaint requires submitting a draft amended complaint." Id*. at 252-53.  An FLSA action is a "non-civil rights case[]."[3]  In *Fletcher-Harlee,* plaintiff's failure to ask for leave to amend or submit a proposed amended pleading "is fatal to its request."  *Id*. at 253.  Here, Plaintiff does not even make the perfunctory—and insufficient—request for leave to amend.  His failure to do so is a waiver of any right to amend he might have had.

---

[3] *Fletcher-Harlee* was applied to an FLSA action by Judge Pappert in *Mackereth v. Kooma, Inc.*, No. CIV.A. 14-04824, 2015 WL 2337273, *12 (E.D. Pa., May 14, 2015). "Plaintiffs' request to amend their complaint is improper. Plaintiffs' request does not describe the 'deficiencies' they seek to address. '[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a).'[*Citation omitted*.] Similarly, Plaintiffs do not attach a draft amended complaint to their response to Defendants' motion. Failure to do so is "fatal to a request for leave to amend." *Id*. (*quoting U.S.* ex rel *Zizic v. Q2Administrators, LLC*, 728 F.3d 228, 243 [3d Cir. 2013]).

Moreover, he never had any right to amend in the first place.  As noted in *Fletcher-Harlee*, there is no right to amend, even in civil rights cases, where amendment would be "futile."  In *Shane v. Fauver*, 213 F.3d 113 (3d Cir. 2000), the Third Circuit held that "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted. [*Citation omitted*.] In assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *Id.* at 115 (*citing* In re *Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 [3d Cir. 1997]).  It is clear that any amendment would be futile.

## VI.
### CONCLUSION.

For the reasons set forth above, and in their original moving papers, the moving defendants request that this Court dismiss the Complaint without leave to amend pursuant to Fed. R. Civ. Proc. 12(b)(6).

Dated: February 16, 2018                     Respectfully submitted

s/    Steven B. Katz          .

John E. MacDonald
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
989 Lenox Drive
Suite 206 (2nd Floor)
Lawrenceville, New Jersey 08648
Telephone: (609) 454-0096
Facsimile:  (609) 844-1102

Donald S. Prophete (admitted *pro hac vice*)
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
2600 Grand Boulevard, Suite 750
Kansas City, Missouri 64108-4600
Telephone: (816) 472-6400
Facsimile:  (816) 472-6401

L. Julius Turman
Philip J. Smith
CONSTANGY, BROOKS, SMITH &
    PROPHETE, LLP
351 California, Suite 200

San Francisco, California 94104
Telephone: (415) 918-3002
Facsimile:  (415) 918-3003

Steven B. Katz
Sarah Kroll-Rosenbaum
CONSTANGY, BROOKS, SMITH &
   PROPHETE, LLP
2029 Century Park East, Suite 1100
Los Angeles, California 90067
Telephone: (310) 909-7775
Facsimile:  (424) 465-6630

*Counsel for National Collegiate
Athletic Association; Duquesne
University; Fairleigh
Dickinson University; La Salle
University; Monmouth
University; The Pennsylvania
State University; Rider
University; Robert Morris
University; Rutgers, The State
University of New Jersey; Saint
Francis University; Saint
Joseph's University; St. Peter's
University; Seton Hall
University; Temple University;
University of Delaware;
University of Pittsburgh; and
Villanova University*

## <u>REQUEST FOR ORAL ARGUMENT</u>

Moving Defendants concur in Plaintiff's request for oral argument pursuant to Local Rule 7.1(f).

<u>s/   Steven B. Katz    </u>.

Steven B. Katz
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 16, 2018, the foregoing document was served on counsel by filing via the CM/ECF system, which will send an email notice to registered parties.

s/    Steven B. Katz        .

Steven B. Katz
CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP